IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

FILED

MICHAEL S. FRANCIS,                    :
WILLIAM E. CARPENTER, JR.,             :        DEC 1 0 1999
MICHAEL H. SCHWARTZ,                   :
                                       :        U.S. DISTRICT COURT
                                       :        CLARKSBURG, WV 26301
             Plaintiffs,               :
                                       :
       v.                              :        No. 5:99cv 151
                                       :
PENNPOWER, INC.,                       :
TAMROCK CORP.,                         :
                                       :
             Defendants.               :

**NOTICE OF REMOVAL**

Defendants PennPower, Inc. and Tamrock Corp., reserving all defenses and objections,

pursuant to 28 U.S.C. §§ 1441(a) hereby file this notice of removal of the civil action captioned

<u>Michael S. Francis, William E. Carpenter, Jr. and Michael H. Schwartz v. PennPower, Inc. and</u>

<u>Tamrock Corp.</u>, Civil Action No. 99-C-71-M, filed in the Circuit Court of Wetzel County, West

Virginia on the following grounds:

1.      Plaintiffs commenced the above-described civil action by filing a complaint

against Defendants in the Circuit Court of Wetzel County, West Virginia, captioned <u>Michael</u>

<u>S. Francis, William E. Carpenter, Jr. and Michael H. Schwartz v. PennPower, Inc. and Tamrock</u>

<u>Corp.</u>, Civil Action No. 99-C-71-M. A copy of the Complaint, Summons and all other process,

pleadings or orders that have been served on Defendants in this action are attached hereto as

Exhibit "A."

2.      Defendant PennPower, Inc. is an entity organized under the laws of the State of Delaware, which at this time does no business, has no principal place of business, and still exists as a corporate entity solely for the purpose of defending the claims asserted by Plaintiffs in their complaint in this action.  Complaint at ¶ 4.

3.      Defendant Tamrock Corp. is an entity organized under the laws of Finland with its principal place of business located in Finland.  Complaint at ¶ 5.

4.      Plaintiff Michael S. Francis is an individual and a citizen of the Commonwealth of Pennsylvania.  Complaint ¶ 1.

5.      Plaintiff William J. Carpenter is an individual who brings these claims in his capacity as the executor of the estate of Jenny L. Francis.  At the time of her death, Jenny L. Francis was a citizen of the State of South Carolina.  Complaint ¶ 2.

6.      Plaintiff Michael H. Schwartz is an individual and a citizen of the Commonwealth of Pennsylvania.  Complaint ¶ 3.

7.      The complaint seeks damages from Defendants, exclusive of interest and costs, in the amount of $250,000.00.  Complaint at p. 9 (Wherefore clause).

8.      Accordingly, this action is one over which this Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(3) based upon diversity of citizenship.  This action therefore may be removed to this Court pursuant to 28 U.S.C. § 1441(a).

9.      This Notice of Removal is timely filed under 28 U.S.C. § 1446(b) in that this Notice of Removal is filed within thirty days of Defendants' receipt, through service or otherwise, of a copy of the Complaint.  The Complaint was served upon the Secretary of State

-2-

of the State of West Virginia on November 12, 1999. Defendant PennPower, Inc. first received a copy of the Complaint on November 18, 1999. Defendant Tamrock Corp. first received a copy of the Complaint on November 19, 1999, through the statutory agent for Tamcorp, Inc., a company related to Tamrock Corp.

      10.    A copy of this Notice of Removal is being filed with the Clerk of the Court of the Circuit Court of Wetzel County, West Virginia and served upon all adverse parties in accordance with 28 U.S.C. § 1446(d).

      11.    This Notice of Removal is being filed on behalf of all defendants and all defendants consent in the removal of this action to this Court.

      **WHEREFORE,** Defendants PennPower, Inc. and Tamrock Corp. hereby remove the action pending in the Circuit Court of Wetzel County, West Virginia to this Court as provided in 28 U.S.C. §§ 1332, 1441 & 1446.

Larry J. Rector (W. Va. Bar No. 6418)
STEPTOE & JOHNSON
Bank One Center
P. O. Box 2190
Clarksburg, WV  26302-2190

Of Counsel

Attorneys for Defendants
PennPower, Inc. and Tamrock Corp.

Dated: December 10, 1999

-3-

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this date a true and correct copy of the foregoing Notice of Removal was served by United States first class mail, postage prepaid, upon the following:

> Dana F. Eddy
> Shawn L. Reed
> Jackson & Kelly PLLC
> 1600 Laidley Tower
> P.O. Box 553
> Charleston, WV 25322

Larry J. Rector

Dated: December 10, 1999

CL578205.1

-4-

09/12 99  TO  13:56 FAX + 358 03 2606610          MIESMÄKI OY                                    ✎003

KEN HECHLER
Secretary of State

MARY P. RATLIFF
Deputy Secretary of State

JAN CASTO
Deputy Secretary of State

CATHERINE FREROTTE
Executive Assistant

Telephone: (304) 558-6000
Corporations: (304) 558-8000
FAX: (304) 558-0900
e-mail: vhaught@secretary.state.wv.us



## STATE OF WEST VIRGINIA

### SECRETARY OF STATE
Building 1, Suite 157-K
1900 Kanawha Blvd., East
Charleston, WV 25305-0770

WILLIAM H. HARRINGTON
Chief of Staff

JUDY COOPER
Director, Administrative Law

Penney Barker
Supervisor, Corporations

(Plus all the volunteer
help we can get!)

## LEGAL NOTICE

November 12  1999

Civil Action  99-C-71-M

Tamrock Corp
Corporation Trust company
1209 Orange Street
Wilmington, DE  19801

I am enclosing

| | |
|---|---|
| ____ summons | ____ original |
| ____ notice | ____ affidavit |
| ____ order | ____ answer |
| ____ petition | ____ cross-claim |
| ____ motion | ____ counterclaim |
| ____ interrogatories | ____ request |
| ____ suggestions | ____ demand |
| ____ subpoena duces tecum | ____ default judgement |
| _1_ summons and complaint | ____ complaint |
| ____ 3rd party summons & complaint | ____ notice of mechanic's lien |
| ____ summons returned from post office | ____ suggestee execution |

which was served on the Secretary at the State Capitol in his capacity as your statutory attorney-in-fact.
According to law, I have accepted service of process.

____ in your name and on your behalf.
____ in the name and on behalf of your corporation.
_X_ in the name and on behalf of your unauthorized foreign corporation.
____ in the name and on behalf of your authorized insurance company.
____ in the name and on behalf of

131587

Please note that this office has no connection whatsoever with the enclosed documents other than to accept service of process in your
name and on your behalf as your attorney-in-fact. Please address any questions about these documents directly to the court or to the
plaintiff's attorney, shown in the enclosed paper. Please, do not call the Secretary of State's Office.

Sincerely,

*Vicki Haught*

Vicki Haught
Supervisor

**EXHIBIT**

"A"

09/12 99  TO  13:57 FAX + 358 0° 2606610     MIESMÄKI OY                              ☑004



# CT System

**Service of Process Transmittal Form**
Wilmington, Delaware

**11/23/1999**

Courier   Via Federal Express (2nd Day)

TO:  Mr. John Walsh
     Controller
     Tamcorp, Inc.
     345 Patton Drive, S.W.
     Atlanta, Georgia  30336

     Tel. No. 1-404-505-0005

RE:   **PROCESS SERVED IN DELAWARE**

FOR     Tamrock Corporation Domestic State: De
        True Name : TAMCORP, INC.

ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:

1. TITLE OF ACTION:          Michael S. Francis, et al., Pltfs. vs Pennpower, Inc., et al., including Tamrock Corp., Defts.

2. DOCUMENT(S) SERVED:       Notice, Summons, Complaint, Exhibits

3. COURT:                    In the Circuit Court of Wetzel County, West Virginia.
                             Case Number 99-C-71-M

4. NATURE OF ACTION:         Complaint for Declaratory Relief and Damages - Breach of Contract.

5. ON WHOM PROCESS WAS SERVED:    The Corporation Trust Company, Wilmington, Delaware

6. DATE AND HOUR OF SERVICE:      By Certified mail on 11/19/1999 with Postmarked Date 11/15/1999

7. APPEARANCE OR ANSWER DUE:      30 days after service

8. ATTORNEY(S):              Dana F. Eddy
                             Jackson & Kelly, PLLC
                             1600 Laidley Tower
                             P.O. Box 553
                             Charleston, WV 25322

9. REMARKS:                  Name discrepancy noted. Please note the enclosed documents were served on the Secretary of State of
                             West Virginia on November 12, 1999.  Fedex returned the papers indicating need better recipient address not
                             listed with 411 or not in phone book.  Attempted to reach via telephone # as shown on our records, &
                             receptionist informed that Tamcorp office were in ATlanta, GA  /resending

                                        SIGNED     CT Corporation System

                                        PER        Joanne A. Santiago /SR
                                        ADDRESS    1209 Orange Street
                                                   Wilmington, DE  19801
                                                   SOP WS 0002671616

Information contained on this transmittal form is recorded for C T Corporation System's record keeping purposes only and to permit quick reference for
the recipient. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information that
can be obtained from the documents themselves. The recipient is responsible for interpreting the documents and for taking the appropriate action.

## IN THE CIRCUIT COURT OF WETZEL COUNTY, WEST VIRGINIA

MICHAEL S. FRANCIS, an individual,
WILLIAM E. CARPENTER, JR., in his
capacity as the executor of the estate of
JENNY L. FRANCIS, deceased, and
MICHAEL H. SCHWARTZ, an individual,

Plaintiffs,

v.

CIVIL ACTION NO.: 99-C- 71-M

PENNPOWER, INC., a Delaware
corporation, and TAMROCK CORP.,
formerly known as TAMPELLA CORP., a
Finnish corporation,

Defendants.

### COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES

For their respective complaint against the above-named defendants, the plaintiffs MICHAEL S. FRANCIS, WILLIAM E. CARPENTER, JR., in his capacity as the executor of the estate of JENNY L. FRANCIS, and MICHAEL H. SCHWARTZ, and each of them, allege and aver:

### PARTIES

1.      MICHAEL S. FRANCIS is an individual who is a resident of the Commonwealth of Pennsylvania with his principal residence situated within Allegheny County ("Mr. Francis").  At times relevant to the matters set forth in the complaint, Mr. Francis was a resident of the State of West Virginia with his principal residence situated within Kanawha County.

2.   WILLIAM J. CARPENTER is an individual who is serving as the executor of the estate of JENNY L. FRANCIS who, at the time of her death, was a resident of the State of South Carolina ("Mr. Carpenter").   At times relevant to the matters set forth in the complaint, JENNY L. FRANCIS was a resident of the State of West Virginia with her principal residence situated within Kanawha County.

3.   MICHAEL H. SCHWARTZ is an individual who is, and at all times relevant to the matters set forth in the complaint was, a resident of the Commonwealth of Pennsylvania with his principal residence situated within Allegheny County ("Mr. Schwartz").

4.   PENNPOWER, INC., formerly known as SAWCO CORPORATION, is a business corporation organized under the laws of the State of Delaware which did business in the Commonwealth of Pennsylvania at offices or facilities situated in Williamsport, Pennsylvania, but which, at this time, does no business, has no principal office, and exists as a corporate entity solely for the purpose of defending the claims for relief set forth in this complaint ("PENNPOWER").

5.   TAMROCK, CORP., formerly known as TAMPELLA CORP., is a foreign corporation organized under, and existing pursuant to, the laws of Finland but which maintains, and at all times relevant to the matters set forth in this complaint maintained, offices or agents in the Commonwealth of Pennsylvania for purposes which include, but is not limited to, resolving its and PENNPOWER's liabilities to the plaintiffs in this civil action ("Tampella").

### JURISDICTION

6.   Pursuant to the provisions of W. Va. Code § 31-1-15 and W. Va. Code § 56-3-33, the Court has jurisdiction over the person of each of the defendants in that the

2

09/12 99  TO  13:57 FAX + 358 03 2606610      MIESMÄKI OY                    ☑007

defendants have transacted business in this state by reason of their execution of a contract that has been, and is to be, performed in the State of West Virginia.

## VENUE

7.     This Court is a proper venue for the prosecution of the matters set forth in this complaint for the reason that the contractual obligations which are the subject matter of this civil action are required to be performed within this venue.

## CAUSE OF ACTION

8.     On or about the date of November 15, 1993, Mr. Francis, JENNY L. FRANCIS ("Ms. Francis"), and Mr. Schwartz, individually and collectively (the "Plaintiffs"), executed a STOCK OPTION AGREEMENT to which PENNPOWER was a party. A true copy of the STOCK OPTION AGREEMENT is attached to, and incorporated in, this complaint as Exhibit "1."

9.     The STOCK OPTION AGREEMENT related to the sale of the shares of stock of MID-ATLANTIC ENERGY OF PA, INC., a corporation duly organized under, and existing pursuant to, the laws of the State of West Virginia ("MAE").

10.     Before the date of the execution of the STOCK OPTION AGREEMENT, Mr. Francis, Ms. Francis, and Mr. Schwartz, collectively, held title to all the issued and outstanding shares of the stock of MAE.

11.     MAE was the general partner of PINEY CREEK LIMITED PARTNERSHIP which was a limited partnership organized pursuant to, and existing under, the laws of the Commonwealth of Pennsylvania ("Piney Creek").

12.     Piney Creek held title to a small power production facility situated in Piney Township, Clarion County, Pennsylvania (the "Project").

3

13.    By reason of the execution of the STOCK OPTION AGREEMENT, PENNPOWER was to acquire title to all the issued and outstanding shares of MAE ("Shares").

14.    As set forth in the provisions of the STOCK OPTION AGREEMENT, PENNPOWER held an option to purchase the Shares, and Mr. Francis, Ms. Francis, and Mr. Schwartz had the right to cause PENNPOWER to purchase the Shares.

15.    Pursuant to the provisions of the STOCK OPTION AGREEMENT, Mr. Francis, Ms. Francis, and Mr. Schwartz invoked their right to require PENNPOWER to purchase the Shares.

16.    Mr. Francis, Ms. Francis, and Mr. Schwartz did, in fact, transfer title to the Shares to PENNPOWER.

17.    Pursuant to the provisions of the STOCK OPTION AGREEMENT, the amount of $250,000 represented the final installment of the consideration for the Shares which was to be paid to Mr. Francis, Ms. Francis, and Mr. Schwartz when three conditions precedent were satisfied (the "Additional Payment").

18.    The first condition precedent was that the lender for the Project and Tampella had to execute a written agreement effectively releasing Tampella from a guaranty of the funding of cost overruns incurred by the Project at certain stages of the Project, including the commencement stage of its commercial operation and the correction stage of certain construction defects (the "First Condition").

19.    The second condition precedent was that the lender had to agree to permit reserve funds or revenues of Piney Creek to be used for the payment of certain operational and maintenance charges of the Project's operator which was, and remains, a subsidiary of Tampella (the "Second Condition").

4

20.    The third condition precedent was that no default was to be declared between the lender and Piney Creek requiring additional capital contributions from the remaining partners of Piney Creek by reason of Piney Creek's correction of an error that had resulted in an organizational cost being improperly listed as an account receivable from MAE (the "Third Condition").

21.    In the express provisions of the STOCK OPTION AGREEMENT, Tampella guaranteed the payment of the Additional Payment by PENNPOWER to Mr. Francis, Ms. Francis, and Mr. Schwartz and evidenced its guaranty by signing the STOCK OPTION AGREEMENT.

22.    To the date of the filing of this complaint, PENNPOWER has not made the Additional Payment.

## CLAIMS FOR RELIEF

### FIRST COUNT
### (Declaratory Relief)

23.    The Plaintiffs incorporate by this reference each and every allegation set forth in paragraphs 6 through 22, inclusive, of this complaint as though the allegations were fully set forth in this paragraph.

24.    The Plaintiffs are informed and, therefore, believe that the First Condition has been satisfied, or should be deemed to be satisfied, by reason of a sale of PENNPOWER's shares of stock of MAE to Colmac Clarion, Inc., in July of 1997.

25.    The Plaintiffs are informed and, therefore, believe that the Second Condition has been satisfied, or should be deemed to be satisfied, by reason of a sale of PENNPOWER's shares of stock of MAE to Colmac Clarion, Inc., in July of 1997.

26.    The Plaintiffs are informed and, therefore, believe that the Third Condition has been satisfied, or should be deemed to be satisfied, by reason of a sale of PENNPOWER's shares of stock of MAE to Colmac Clarion, Inc., in July of 1997.

27.    To the extent that any one of the First Condition, the Second Condition, or the Third Condition has not been formally or technically satisfied, the Plaintiffs believe that, if PENNPOWER or Tampella had acted in good faith and with due diligence, the conditions could and would have been formally or technically satisfied by this time.

28.    An implied covenant in the STOCK OPTION AGREEMENT was that SAWCO or Tampella would act in good faith toward, and would fairly deal with, the Plaintiffs requiring, therefore, that PENNPOWER or Tampella, with all due diligence and commitment, would cause the First Condition, the Second Condition, and the Third Condition to be fully and completely satisfied at the earliest possible date.

29.    The Plaintiffs request the declaration of this Court with respect to the rights of the parties under the STOCK OPTION AGREEMENT including, but not limited to, a declaration that the conditions precedent to the Additional Payment have been or should have been satisfied and that the Additional Payment is due and owing by PENNPOWER to the Plaintiffs at this time.

## SECOND COUNT
### (Breach of Contract)

30.    The Plaintiffs incorporate by this reference each and every allegation set forth in paragraphs 6 through 22, inclusive, and paragraphs 24 through 29, inclusive, of this complaint as though the allegations were fully set forth in this paragraph.

6

31.     Notwithstanding its request for a declaration of the parties' respective rights, the Plaintiffs affirmatively allege that the Additional Payment is due and owing by SAWCO to the plaintiffs at this time and that PENNPOWER has refused to make the Additional Payment notwithstanding the Plaintiffs' demand for the Additional Payment.

32.     Accordingly, PENNPOWER has breached its contractual obligations to the Plaintiffs.

33.     Plaintiffs have been damaged by the actions and conduct of PENNPOWER in an amount equal to the Additional Payment plus accrued, and additionally accruing, interest and incurred, and any additionally incurred, expenses of collection.

## THIRD COUNT
### (Breach of Contract)

34.     The Plaintiffs incorporate by this reference each and every allegation set forth in paragraphs 6 through 22, inclusive, and paragraphs 24 through 29, inclusive, of this complaint as though the allegations were fully set forth in this paragraph.

35.     Tampella has guaranteed the payment by PENNPOWER of the Additional Payment.

36.     PENNPOWER has refused to pay the Additional Payment.

37.     Accordingly, Tampella is obligated to pay to the Plaintiffs the Additional Payment plus accrued, and additionally accruing, interest and incurred, and any additionally incurred, expenses of collection.

7

## FOURTH COUNT
### (Breach of the Covenant of Good Faith and Fair Dealing)

38.    The Plaintiffs incorporate by this reference each and every allegation set forth in paragraphs 6 through 22, inclusive, and paragraphs 24 through 29, inclusive, of this complaint as though the allegations were fully set forth in this paragraph.

39.    If the Court declares that the First Condition, the Second Condition, and the Third Condition (the "Conditions") have not been fulfilled or should not be deemed to be fulfilled, this declaration shall have necessarily resulted from the failure of PENNPOWER and Tampella to fulfill the Conditions.

40.    Pursuant to the STOCK OPTION AGREEMENT, PENNPOWER and Tampella, and each of them, had an obligation to perform the express covenants of the agreement in good faith and in fairness to the Plaintiffs.

41.    PENNPOWER and Tampella have, in fact, made no attempt to satisfy the Conditions and, indeed, may have fashioned or manipulated the sale of the stock of MAE in a manner that purposefully avoided the satisfaction of the Conditions.

42.    PENNPOWER and Tampella have taken actions to prevent the Plaintiffs from receiving the Additional Payment, including, but not limited to, refusing to inform the Plaintiffs regarding the sale of the shares of MEA and refusing to divulge the terms and conditions of the sale.

43.    PENNPOWER and Tampella have failed to act in good faith and in fairness to the Plaintiffs in contravention of the implied covenant in the STOCK OPTION AGREEMENT to do so with respect to fulfilling the Conditions.

44.    The Plaintiffs have been injured by reason of the breach of the covenant of good faith and fair dealing and, as a result, PENNPOWER and Tampella, and each of them, is obligated to pay to the Plaintiffs an amount equal to the Additional Payment plus accrued,

and additionally accruing, interest and incurred, and any additionally incurred, expenses of collection.

WHEREFORE, the Plaintiffs, and each of them, hereby pray for the following relief with respect to the complaint:

1.   That with respect to the First Count, the Court enter its judgment declaring that all conditions precedent to the Additional Payment have been, or should have been, satisfied, and that the Additional Payment is, at this time, due and owing to the Plaintiffs, and each of them, by PENNPOWER;

2.   That with respect to the Second Count, the Court enter its judgment in favor of the Plaintiffs and against PENNPOWER awarding damages in the amount of $250,000 together with pre-judgment and post-judgment interest at the maximum allowable legal rate and assessing any and all allowable costs of this action, including fees and expenses of attorneys;

3.   That with respect to the Third Count, the Court enter its judgment in favor of the Plaintiffs and against Tampella awarding damages in the amount of $250,000 together with pre-judgment and post-judgment interest at the maximum allowable legal rate and assessing any and all allowable costs of this action, including fees and expenses of attorneys;

4.   That with respect to the Fourth Count, the Court enter its judgment in favor of the Plaintiffs and against each of Tampella and PENNPOWER awarding damages in the amount of $250,000 together with pre-judgment and post-judgment interest at the maximum allowable legal rate and assessing any and all allowable costs of this action, including fees and expenses of attorneys; and

5.     That with respect to all counts of the complaint, the Court award such

other and further relief to the Plaintiffs as the Court deems to be just and proper.

**A TRIAL BY JURY IS DEMANDED AS TO ALL ISSUES TRIABLE TO A JURY.**

MICHAEL S. FRANCIS, an individual, WILLIAM
E. CARPENTER, JR., in his capacity as executor
for the estate of JENNY L. FRANCIS, deceased,
and MICHAEL H. SCHWARTZ, an individual

By Counsel

---

DANA F. EDDY (W. Va. Bar # 4848)
SHAWN L. REED (W. Va. Bar # 6801)
**JACKSON & KELLY PLLC**
1600 Laidley Tower
P.O. Box 553
Charleston, WV 25322
(304) 340-1307

10

EXHIBIT 1

## STOCK OPTION AGREEMENT

THIS STOCK OPTION AGREEMENT, effective as of November 15, 1993 (the "Option Agreement"), is entered into by and among SAWCO CORPORATION, a Delaware corporation ("Sawco"), MID-ATLANTIC ENERGY OF PA, INC., a West Virginia corporation ("MAE") and MICHAEL S. FRANCIS, JENNY L. FRANCIS, and MICHAEL H. SCHWARTZ (hereinafter individually referred to as a "Seller" and collectively referred to as the "Sellers").

WHEREAS, Sellers own beneficially and of record those shares of capital stock of MAE as set forth opposite their respective individual names on Exhibit A attached hereto, which stock in the aggregate constitutes all of the issued and outstanding shares of MAE (collectively, the "Shares"); and

WHEREAS, MAE is the sole general partner of PINEY CREEK LIMITED PARTNERSHIP, a Pennsylvania limited partnership ("PCLP"), of which Sawco and its affiliate, TAMPELLA POWER CORPORATION, a Delaware corporation ("TPC"), are the sole limited partners; and

WHEREAS, PCLP owns a small power production facility situate in Piney Township, Clarion County, Pennsylvania ("Project"); and

WHEREAS, on or about November 3, 1993, TPC and Sellers executed a Memorandum of Agreement in Principle which outlined the terms of an option agreement under which TPC or its affiliate could acquire, or be obligated to acquire, the Shares from Sellers ("Letter of Intent"); and

WHEREAS, the parties hereto wish to set forth the terms and conditions as contemplated by the Letter of Intent.

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements contained herein, and other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the parties hereto, intending to be legally bound hereby, agree as follows:

1.  <u>Recitals</u>.  The foregoing recitals are incorporated into the body of this Agreement and made a part hereof.

2.  <u>Right to Call Shares</u>.

(a)  <u>Grant</u>.  Sellers hereby grant to Sawco, as the designee of TPC under the Letter of Intent, all the rights and obligations reserved to TPC thereunder (except for such obligations as are assumed by Tampella under Paragraphs 7, 17 and 19(c) hereof), including, without limitation, the option to purchase from Sellers during the period commencing this date and extending to and including June 30, 1994 (the "Call Term") all, and not less than all, of the Shares (the "Call").

(b)  <u>Consideration</u>.  In consideration of the grant of the Call, and to induce same, Sawco is paying to Sellers contemporaneous with the execution of this Agreement, a option fee of $500,000 (allocated among Sellers in accordance with their relative interests in MAE as set forth on Exhibit A), which amount shall be applied against the first installment of the purchase price for the Shares when

- 2 -

and if acquired hereunder (either by Call or Put) and is otherwise nonrefundable. The option fee is being paid by wire transfer to Sellers' designated account(s) at the Bank of Paden City, Paden City West Virginia.

(c)  Call Purchase Price.  The aggregate purchase price (the "Call Exercise Price") to be paid by Sawco for the Shares upon exercise of the Call is $1,355,000, payable (i) $500,000 by application of the option fee theretofore paid under subparagraph (b) above, (ii) $655,000 in guaranteed funds to Sellers (allocated among Sellers in accordance with their respective interests in MAE as set forth on Exhibit A), upon the closing on the Call, and (iii) the balance of $200,000 in guaranteed funds to Sellers (allocated as aforesaid) upon the earlier of (A) the sale of the limited partners' equity in PCLP, (B) a refinancing of the Project which produces excess cash (i.e. any amount by which the proceeds of such refinancing exceeds the sum of the payoff of the prior indebtedness and the costs incurred to effect the refinancing) at settlement to PCLP, but only to the extent of such excess cash less than $200,000 (with the balance of such $200,000, if any, to be paid on June 30, 1994) or (c) June 30, 1994.

(d)  Nature.  The grant of the Call is irrevocable and exclusive.

3.   <u>Right to Put Shares</u>.

(a)   <u>Grant</u>.  Sawco hereby grants to Sellers (acting together) the right to require Sawco to purchase at any time during the period commencing January 1, 1994, and extending to and including June 30, 1994 ("Put Term") all, and not less than all, of the Shares ("Put").

(b)   <u>Put Purchase Price</u>.  The aggregate purchase price ("Put Exercise Price") to be paid by Sawco for the Shares upon exercise of the Put is as follows:

(i)   If at the time of the exercise of the Put, all of the Conditions (hereinafter defined) have been satisfied, the Put Exercise Price shall be the same as the Call Exercise Price and paid in the same manner, each as described in Paragraph 2(c) above.

(ii)  If at the time of the exercise of the Put, all of the Conditions are not satisfied, the Put Exercise Price shall be $1,105,000, payable (A) $500,000 by application of the option fee theretofore paid under Paragraph 2(b) above, (B) $405,000 in guaranteed funds to Sellers (allocated among them in accordance with their relative interests in MAE as set forth on Exhibit A) upon the closing on the Put, and (C) the balance of $200,000 in accordance with the provisions of Paragraph 2(c)(iii) above.  An additional $250,000 shall be payable in guaranteed funds

- 4 -

(allocated as aforesaid) if and when all of the
Conditions have thereafter been satisfied.

(ii)  The "Conditions" are:

A.   The execution by Swiss Bank Corporation
("SBC") as lead lender to the Project of a written
agreement with TAMPELLA CORP, Tampere, Finland, a
Finnish corporation ("Tampella"), on terms which
require the payment or posting of no additional moneys
or recourse to SBC by PCLP, TPC, Sawco, Tampella, or
any of their affiliates (including, without limitation,
MAE after the acquisition of the Shares as contemplated
in this Option Agreement), to the effect that SBC will
cause a release of Tampella's entire $2,000,000 cost
overrun guaranty upon (aa) commercial conversion of the
Project and (bb) remediation of certain Project
construction defects (outlined in the SE Technologies
Deficiency Corrective Action Report dated August 13,
1993 and currently in possession of all parties hereto)
by the contractor or Sawco within a budget reasonably
determined by SBC.

B.   The agreement by SBC, on terms reasonably
acceptable to Sawco, to release PCLP funds and/or
Project operating revenues for the payment of the
Project operator's O&M charges from and after March 6,
1993 (other than Subordinated O&M charges which will be

- 5 -

paid pursuant to the terms of applicable Project documents).

C.     That by the date when the latter of the events described in clauses (A) or (B) has occurred, SBC has not asserted a default or breach by PCLP of PCLP's Credit Agreement with SBC as a result of the reclassification of PCLP's account receivable from MAE as further described in Paragraph 10, which would require TPC, Sawco, Tampella or any of their affiliates (including, without limitation, MAE after the acquisition of the Shares as contemplated in this Option Agreement) to provide additional capital to PCLP to eliminate such account receivable.

4.   Exercise of Call or Put.

(a)  Subject to the conditions set forth herein, the Call or Put may be exercised by Sawco or Sellers, as the case may be, for all and not less than all of the Shares during the Call Term or Put Term, as the case may be.  In the event Sawco or Sellers elect to exercise the Call or Put, as the case may be, Sawco or Sellers, as the case may be, shall send a written notice of exercise to Sellers or Sawco, as the case may be, specifying the place and date (not later than five (5) business days nor earlier than three (3) business days from the date such notice is mailed) of such closing.

(b)   Sellers, and each of them, represent(s) that he or she has not, and prior to the expiration of the Call or Put will not, take any action which would have the effect of preventing or disabling Sellers from delivering the Shares to Sawco upon exercise of the Call or otherwise preventing or disabling Sellers from performing their obligations or Sawco from exercising its rights under this Call.  Without limiting the generality of the foregoing, Sellers agree not to (i) take any action which would have the effect of changing any of Sellers' voting or equity interests in MAE, or (ii) permit MAE, (A) to issue any shares of its capital stock, or issue or create any warrants, obligations, subscriptions, options, or convertible securities, or other commitments under which any additional shares of its capital stock may be authorized or issued, or transferred from treasury or (B) sell, dispose or otherwise transfer any of its interest in PCLP.

5.   _Delivery_.  At the closing on the Put or Call hereunder, (a) Sawco shall pay Sellers the applicable portion of the Call or Put Exercise Price for the Shares and (b) each Seller shall deliver to Sawco stock certificates duly executed in transferable form (or with appropriate stock powers attached) representing such Seller's respective shares so purchased.

6.   _Affirmative Covenants of Sellers_.

(a)   Commencing on the date hereof and extending to an through December 31, 1993, Sellers shall cause MAE to work

- 7 -

cooperatively with Sawco and use best efforts to resolve major Project issues in a manner reasonably satisfactory to Sawco, such efforts to include (by way of illustration and not limitation):

(i)   negotiating a settlement with FruCon of all contractor issues in a manner consistent with FruCon's September 8, 1993 settlement offer (with such additions and modifications as are reasonably acceptable to both MAE and Sawco);

(ii) negotiating a settlement with SBC which allows for a release of PCLP funds and/or Project operating revenues to pay operating costs to facilitate payment of Project costs such as those outlined in Paragraph 7(a), (b) and (c), under terms and conditions reasonably acceptable to MAE and Sawco;

(iii) achieving the Conditions;

(iv) resolving the Project's ash problem; and

(v)   producing an agreement by all necessary parties with respect to the increase in Project output by an additional 3 megawatts or additional total megawatt hours per annum with up to 100% capacity factor at 30 megawatt capacity.

During such period, Sellers shall continue to devote their time and attention to MAE and PCLP affairs in a manner consistent with past practice.

(b)   Commencing January 1, 1994, and thereafter for the duration of this Agreement, Sellers shall cause MAE to serve as Sawco's agent, and take actions relating to PCLP management only as directed by Sawco.

(c)   Commencing this date and extending for the duration of this Agreement, Sellers shall cause MAE and in turn PCLP to conduct business only in the ordinary course of business.

(d)   Upon closing on the Put or Call hereunder, (i) the assets of MAE will consist solely of (A) an equity investment in PCLP (as general partner) having a net cost to MAE of $155,000 and (B) any indebtedness due from, or claim against, PCLP then held or at any time held by MAE or any affiliate of MAE since the inception of PCLP and not theretofore unconditionally satisfied and (ii) the liabilities will consist solely of those attributable to PCLP as then reflected on the books and records of PCLP for which MAE is contingently liable as general partner as identified in Paragraph 7(a), (b) and (c).  Upon such closing and transfer of Shares, MAE shall have no outstanding contractual commitments or obligations to any party other than those obligations to PLCP outlined in the SBC Credit Agreement and related documents dated as of October 1, 1990, as amended.

(e)   From the date hereof to the effective date of transfer of the Shares, Sellers shall take all actions

- 9 -

necessary to maintain MAE's "S" Corporation status as further described in Paragraph 11(l).

7.  <u>Affirmative Covenants of Tampella</u>.

(a)  On or before December 1, 1993 Tampella shall cause payment of certain scheduled and accrued third-party liabilities of PCLP (on behalf of PCLP and the Project) to include Orrick Harrington, Dewey Ballentine, Deloitte & Touche and legal costs for the FruCon (CPC) arbitration, such liabilities currently total approximately $162,000, as well as third-party liabilities of PCLP which are reasonably and necessarily incurred for fair value, from and after the date hereof and continuing for the duration of this Agreement.

(b)  From the date hereof and extending until transfer of the Shares, Tampella shall cause payment of Project G&A costs to MAE in the budgeted amount of $13,333 per month. Fractional months' G&A will be prorated.

(c)  From the date hereof, Tampella shall indemnify Sellers from and against liabilities to FruCon (CPC) or SBC for legal (White & Case) or technical (R.W. Beck) expenses related to the Project which may be adjudicated against Sellers with respect to a court-determined piercing of the MAE corporate veil and as a result of MAE's activities as the general partner of PCLP.  Such indemnification shall not, however extend to liabilities arising out of a breach of MAE of this Agreement.  The defense of any indemnified

- 10 -

liability issue hereunder (including the defense of any veil-piercing issue) shall be controlled and paid for by Tampella. Additionally, from and after this date, Sawco and each affiliate thereof (i.e. Tampella Services, Inc. and TPC) hereby waives any claim or action against MAE or Sellers for actions taken at any time by MAE or Sellers in the carrying out of MAE's obligations as general partner of PCLP which are taken in good faith and not in violation of this Agreement.

(d)   The parties understand and agree that the costs or indemnified liabilities which Tampella shall cause to be paid under this Paragraph 7 are costs or liabilities of PCLP and that, if moneys are advanced by Tampella, or by Tampella through its affiliate, to PCLP and/or MAE for payment of these costs or liabilities, then, if and when funds are made available to PCLP and/or MAE to cover such costs or liabilities, or any of them, MAE shall cause those moneys to be paid over to Tampella or its affiliate, as appropriate, as reimbursement.

8.   <u>Conditions of Closing on Put or Call Option</u>.  The following shall be conditions of closing on the Put or Call hereunder:

(a)   Repayment to MAE of any shareholder loans and advances due from affiliates of MAE; and

(b)   MAE shall have made no distribution to Sellers during the period commencing January 1, 1993, and extending

to immediately prior to the transfer of the Shares. The parties acknowledge that immediately prior to such transfer MAE shall then make a distribution to Sellers as described in Paragraph 9 below. In no event and at no time shall MAE have distributed or assigned to Sellers or to any other party, any claim against, or obligation of, PCLP other than that management fee described in Paragraph 7(b) above for the current monthly period, which as of closing on the Put or Call hereunder is accrued but unpaid.

9. <u>Distribution of Certain Assets by MAE</u>. Between the time of the notice of exercise and closing on the Put or Call hereunder, but not otherwise, Sellers shall have the right to cause MAE to distribute to them as the shareholders thereof, any cash of MAE and/or indebtedness due MAE from affiliates of MAE other than PCLP, with the sole exception of a current period fee described in Paragraph 7(b), which as of closing on the Put or Call hereunder shall have been accrued but unpaid.

10. <u>Financial Representations and Covenants of Sellers</u>.

(a) The parties acknowledge that PCLP has currently reflected on its books of account an account receivable in the amount of approximately $409,000. MAE and Sellers advise and represent and Sawco acknowledges that the classification of such amount as an account receivable is erroneous and that such amount should be reclassified as capitalized organization costs of PCLP.

- 12 -

(b)  The parties acknowledge that by law the taxable year of MAE shall terminate with the transfer of the Shares as contemplated herein and consequently Sellers shall report the items of income and expense of MAE from the inception of its fiscal year to the date of such transfer ("Stub Period").  Secondly, the parties agree that if lawful, they will cause the Partnership to allocate to MAE for inclusion in the Stub Period, such percentage of the Partnership's net income/loss for the Stub Period (or each portion thereof) as established under the applicable provisions of the PCLP partnership agreement.

11.   <u>Representations and Warranties of Sellers</u>.  Each Seller hereby represents and warrants (which shall survive closing on the Put or Call hereunder and any investigation by Sawco and affiliates), and at the closing for the purchase of the Shares by Put or Call each Seller will represent and warrant (which shall survive as aforesaid), that:

(a)  Seller is the holder of record of the number of Shares transferred to Sawco at the closing, and such Shares are free and clear of all liens, encumbrances, voting agreements, shareholder agreement, equities, preemptive rights, options, claims, charges and restrictions whatsoever;

(b)  Such Seller has the power, right, capacity and authority to execute and deliver this Option Agreement, and to sell, transfer and deliver her or his respective Shares

- 13 -

to Sawco in accordance with the terms, covenants and conditions of this Option Agreement;

(c)  This Option Agreement has been duly and validly executed and delivered by such Seller and constitutes a valid and binding agreement of the Seller enforceable against Seller in accordance with its terms;

(d)  Such Seller is not subject to or bound by any agreement or judgment, order, writ, prohibition, injunction or decree of any court or other governmental body which would prevent the execution, delivery or performance of this Option Agreement, or the sale, transfer or delivery of the Shares to Sawco as contemplated hereby;

(e)  The Shares so transferred by such Seller have been duly authorized, validly issued, fully paid and are nonassessable;

(f)  MAE owns the sole general partner interest in PCLP and such is free and clear of all liens, encumbrances and, to the best knowledge of Sellers, any claims whatsoever.

(g)  MAE is duly incorporated and organized and validly existing as a corporation in good standing under the laws of its jurisdiction of incorporation, with full corporate power to own or lease and operate its assets and to carry on its business in the manner in which such business is now being conducted, and is in good standing and duly qualified as a foreign corporation in each other jurisdiction where its failure to obtain and maintain such good standing and

- 14 -

qualification would have a material and adverse effect on its conditions (financial or otherwise), assets or business.

(h)  MAE is authorized to issue 20,000 shares of common shares, each with a par value of $10, of which 6,700 shares are issued and outstanding.  The name of and number of shares owned by each of the shareholders of record of such corporation as of the date hereof and as of the closing date on the Put or Call is set forth on Exhibit A.  No person, other than as shown on Exhibit A, owns of record or beneficially any of the capital stock of MAE and all of such capital stock will be owned by the persons set forth on Exhibit A on the closing date on the Put or Call.  The capital stock shown on Exhibit A comprises all of the issued and outstanding capital stock of MAE.  All of the capital stock is validly issued and outstanding, fully paid and nonassessable, and no such capital stock was issued in violation of preemptive rights, nor does any shareholder have a claim to preemptive rights.  There is not outstanding any option, warrant or right to purchase from MAE or from any shareholder of MAE, or to require MAE to issue, any capital stock or other security convertible into or exchangeable for shares of such stock or any other security of MAE.

(i)  Except as specified in Paragraph 10, the Forms 1120S for MAE for 1990 through 1992, inclusive, the Forms 1065 for PCLP for 1990 through 1992, inclusive, the state

tax returns filed by MAE for such period, the audited financial statements for PCLP and consolidated financial statements for MAE and PCLP for fiscal years 1990 through 1992, inclusive, and the internally generated profit and loss statement for MAE and for PCLP for the period January 1, 1993, through September 30, 1993 (collectively "Financial Statements"), heretofore provided to counsel to Sawco are true, correct and complete.  The Financial Statements fairly and accurately present the financial condition of the relevant entity at the respective dates thereof and for the period covered thereby.  Each of the financial Statements has been prepared from the books and records of the respective entity based upon generally accepted accounting principles consistently applied.

(j)  Immediately prior to the closing date on the Put or Call, those assets of MAE described in Paragraph 9 shall have been distributed by MAE to Sellers (and no others), and the remaining assets and the liabilities of MAE shall be limited to those described in Paragraph 6(d) above.  All of the costs of such distributions and assignments (including, but not limited to, Federal and state income taxes, sales, use and transfer taxes, attorneys' fees and other costs) shall be borne by Sellers.

(k)  Except as set forth in Exhibit B attached hereto and incorporated herein by reference, since January 1, 1993, MAE and PCLP have conducted business only in the ordinary

- 16 -

course of business, have made no material alteration in the
manner in which MAE or PCLP keeps its books, accounts or
records or in the accounting practices therein reflected,
and has not made any material amendment or termination of
any material contract or obligation of MAE or PCLP.

(1)  MAE has duly filed all tax returns required to be
filed by it.  From the inception of its corporate existence
to date, MAE has qualified and does qualify as an "S"
corporation as defined in Section 1361(a) of the Internal
Revenue Code of 1986, as amended, and has maintained and
does maintain effective "S" elections with all applicable
federal and state taxing authorities which recognize "S"
Corporation status.

(m)  Except as set forth on Exhibit C, there is no
action, suit, arbitration, proceeding, grievance, or
investigation pending, or to the best knowledge of Sellers
overtly threatened, before any court, tribunal, panel,
master or governmental agency, authority or body in which
MAE or PCLP is a party.

(n)  Sellers have disclosed to Sawco all facts of a
material nature known to each of them (after reasonable
investigation and inquiry) regarding MAE and PCLP.

(o)  Attached hereto as Exhibit D is a listing of all
correspondence between MAE and SBC for the period August 8,
1989 through September 30, 1993, which listing was derived
from a review of the correspondence file.  The

- 17 -

correspondence file, as delivered to counsel for Sawco and as summarized in Exhibit D contained and, as updated to the date hereof, contains all material correspondence between MAE and SBC. All material correspondence which shall or should have been added to the SBC correspondence file since September 30, 1993 and to date has been delivered contemporaneously with the execution hereof.

(p)  Attached hereto as Exhibit E is a listing of all correspondence between MAE and Frucon (CPC) for the period June 7, 1990 through  September 30, 1993, which listing was derived from a review of the correspondence file.  The correspondence file, as delivered to counsel for Sawco and as summarized in Exhibit E contained and, as  updated to the date hereof, contains all material correspondence between MAE and Frucon (CPC).  All material correspondence which shall or should have been added to the Frucon (CPC) correspondence file since September 30, 1993 and to date has been delivered contemporaneously with the execution hereof.

(q)  Attached hereto as Exhibit F is a listing of all documents submitted to Sawco and its counsel by Shareholders in response to counsel's request for documents submitted September 27, 1993 as part of its due diligence review.  To the best knowledge of Sellers, (i) the documents listed are all of the documents requested to be provided and the provision thereof is fully responsive to said document

- 18 -

request and (ii) the documents listed are true, correct and complete.

12.   Representations and Warranties of Sawco.  Sawco hereby represents and warrants to Sellers that (a) it has full corporate power and authority to execute and deliver this Option Agreement and to consummate the transactions contemplated hereby; (b) the execution and delivery of this Option Agreement and the consummation of the transactions contemplated hereby have been duly and validly authorized by its Board of Directors and no other corporate proceedings on its part are necessary to authorize this Option Agreement or to consummate the transactions so contemplated; (c) this Option Agreement has been duly and validly executed and delivered by it and constitutes a valid and binding agreement of it enforceable against it in accordance with its terms; and (d) no affiliate of it has any claim or cause of action against MAE or Sellers.

13.   Termination.  Except with respect to the representations and warranties set forth in Paragraphs 11 and 12 hereof and to covenants set forth in Paragraphs 6 and 7 hereof, all of which shall be without limitation, this Option Agreement, and the obligations of Sellers, Tampella and Sawco hereunder, shall automatically terminate upon June 30, 1994, at 5:00 p.m., EDT, unless such termination shall be sooner accomplished by closing on the Put or Call hereunder.

14.   Restrictive Legend.  Upon the execution of this Agreement, Sellers agree to place, or cause to be placed, a

- 19 -

legend on the certificates representing the Shares, substantially
to the following effect:

> THE SALE, TRANSFER, ASSIGNMENT, PLEDGE OR
> ENCUMBRANCE OF THE SHARES REPRESENTED BY THIS
> CERTIFICATE IS SUBJECT TO THE TERMS AND CONDITIONS OF A
> STOCK OPTION AGREEMENT, DATED AS OF NOVEMBER 15, 1994,
> BY AND AMONG SAWCO CORPORATION, MICHAEL S. FRANCIS,
> JENNY L. FRANCIS AND MICHAEL H. SCHWARTZ, A COPY OF
> WHICH AGREEMENT IS ON FILE WITH THE SECRETARY OF THE
> COMPANY.

So long as this Option Agreement is in effect, Sellers further
agree to cause MAE to place a stop transfer order on the books
and records of MAE with respect to the transfer of any Shares
other than pursuant to the terms and conditions of this Option
Agreement.

15.  Specific Performance.  Sellers acknowledge that the
Option granted to Sawco herein, and the Shares covered hereby,
are unique and that Sawco will have no adequate remedy at law if
any of Sellers breaches any covenant contained herein or fails to
perform any of such Seller's obligations under this Option
Agreement.  The parties agree that  Sawco, on the one hand and
Sellers on the other shall have the right, in addition to any
other rights which  either such party may have, to specific
performance and equitable injunctive relief if  either such party
shall fail or threaten to fail to perform  its or their

- 20 -

obligations to purchase or sell Shares under this Option Agreement.

16.  <u>Condition Precedent</u>.  It is absolute condition of the obligations of Tampella and Sawco under the provisions of this Option Agreement that each and all of Sellers sign this Option Agreement.

17.  <u>Payment Guaranty</u>.  Tampella hereby guarantees to Sellers the payment of the Call Exercise Price or the Put Exercise Price, as applicable, due them from Sawco under this Agreement.

18.  <u>Right of Offset</u>.  Any claims of Tampella or Sawco arising hereunder against Sellers and/or MAE as a result of the breach by Sellers and/or MAE of any representation, warranty covenant or agreement of Sellers and/or MAE set forth herein shall be satisfied first by a right of set-off against moneys then due and owing hereunder by Tampella and/or Sawco to Sellers.

19.  <u>Miscellaneous</u>.

(a)  <u>Assignability</u>.  No party hereto shall assign any interest herein without the prior written consent of the other parties hereto, which shall not be unreasonably withheld.

(b)  <u>Validity</u>.  The invalidity or unenforceability of any provision of this Option Agreement shall not affect the validity or enforceability of any other provisions of this

- 21 -

Option Agreement, which shall remain in full force and effect.

(c)  Further Assurances.  Tampella, Sawco and Sellers will execute and deliver all such further documents and instruments and take all such further action as may be necessary in order to consummate the transactions contemplated hereby.

(d)  Third Parties.  Nothing expressed or implied in this Agreement is intended or shall be construed to confer upon or give to any third party any rights or remedies by virtue of this Agreement or any exercise or nonexercise of the Put and Call granted hereby.

(e)  Amendments or Extension.  This Option Agreement may not be modified, amended, altered or supplemented except upon the execution and delivery of a written agreement executed by all the parties hereto.  This Option Agreement may be extended upon the mutual written agreement of all of the parties hereto.

(f)  Notices.  Except as otherwise expressly provided herein, all notices, requests, claims, demands and other communications hereunder shall be in writing and shall be furnished by hand delivery, by telegram or telex, or by mail (registered or certified, postage prepaid, return receipt requested) to Sellers and Sawco at the addresses set forth below.  Any such notice shall be deemed duly given upon the date it is actually received by the addressee to whom notice

- 22 -

is intended to be given or it is actually delivered at the
address of the addressee as shown below:

| | |
|---|---|
| If to Sellers: | Michael S. & Jenny L. Francis<br>401-A Bibby Street<br>Charleston, WV 25301 |
| | Michael H. Schwartz<br>1800 Beechwood Boulevard<br>Pittsburgh, PA 15217 |
| With a copy to: | Lee O. Hill, Esquire<br>Jackson & Kelly<br>1600 Laidley Tower<br>P.O. Box 553<br>Charleston, WV 25322 |
| If to Sawco: | Hannu Rusanen<br>Tampella Power Corporation<br>2600 Reach Road<br>P.O. Box 3308<br>Williamsport, PA 17701-0308 |
| With a copy to: | Michael G. Jarman, Esquire<br>McNees, Wallace & Nurick<br>100 Pine Street<br>P.O. Box 1166<br>Harrisburg, PA 17108-1166 |

The addresses set forth above may be changed by Sellers
or Sawco, as the case may be, upon furnishing to the other
party a notice of change of address in accordance with the
terms of this paragraph.  With respect to the notice to be
provided under Paragraph 4(a) hereof, each Seller hereby
irrevocably appoints and constitutes Michael S. Francis his
or her designated representative for purposes of
communicating Sellers' decision with respect to the exercise
of the Put.

(g)  Governing Law.  This Option Agreement shall be
governed by and construed in accordance with the substantive

- 23 -

law of the Commonwealth of Pennsylvania applicable to contracts made and to be performed in such state.

(h)   Counterparts.   This Option Agreement may be executed in several counterparts, each of which shall be an original, but all of which together shall constitute one and the same agreement.

(i)   Effect of Headings.   The section and paragraph headings herein are for convenience only and shall not affect the construction hereof.

(j)   Time of the Essence.   The parties agree that time shall be of the essence in the performance of all obligations hereunder.

(k)   Successors and Assigns.   This Option Agreement shall be binding upon and inure to the benefit of the parties, their heirs, personal representatives, respective successors and permitted assigns.

(l)   Integration.   This Agreement (including the Exhibits hereto) constitutes the entire agreement between the parties (and their affiliates) regarding the subject matter hereof and replaces any prior agreements or understandings among the parties, including without limitation that contained in the Memorandum of Understanding effective September 13, 1990.

20.   Confidentiality.   Neither the Sellers, or any of them, on one hand, or Sawco, on the other hand, shall disclose to any third party the nature or existence of this Agreement or the

- 24 -

terms hereof without the express, written consent of the other party. Notwithstanding the foregoing, Sawco may disclose the existence of this Agreement to SBC and FruCon (CPC) in the course of its negotiations with such parties as it may determine in its sole discretion.

21. <u>Control of Tax Matters</u>. Sellers assume all tax liabilities of MAE accruing to the date of transfer of the Shares. Sellers shall control the prosecution or defense of any disputes with taxing authorities relating to such liabilities, and shall pay all costs relating thereto.

IN WITNESS WHEREOF, the parties have caused this Agreement to be duly executed on the day and year stated below:

SAWCO, CORPORATION

Date:_____, 1993          By_____

ATTEST: _____

_____

SELLERS:

Date:_____, 1993          _____(SEAL)
                                      Michael S. Francis

Date:_____, 1993          _____(SEAL)
                                      Jenny L. Francis

Date: _____, 1993         _____(SEAL)
                                      Michael H. Schwartz

[Signatures continued on next page.]

- 25 -

terms hereof without the express, written consent of the other party. Notwithstanding the foregoing, Sawco may disclose the existence of this Agreement to SBC and FruCon (CPC) in the course of its negotiations with such parties as it may determine in its sole discretion.

21. <u>Control of Tax Matters</u>. Sellers assume all tax liabilities of MAE accruing to the date of transfer of the Shares. Sellers shall control the prosecution or defense of any disputes with taxing authorities relating to such liabilities, and shall pay all costs relating thereto.

IN WITNESS WHEREOF, the parties have caused this Agreement to be duly executed on the day and year stated below:

SAWCO, CORPORATION

Date:_____, 1993        By_____

ATTEST:

_____

SELLERS:

Date:_____, 1993        _____(SEAL)
                                   Michael S. Francis

Date:_____, 1993        _____(SEAL)
                                   Jenny L. Francis

Date: _____, 1993       _____(SEAL)
                                   Michael H. Schwartz

[Signatures continued on next page.]

- 25 -

terms hereof without the express, written consent of the other party.  Notwithstanding the foregoing, Sawco may disclose the existence of this Agreement to SBC and FruCon (CPC) in the course of its negotiations with such parties as it may determine in its sole discretion.

   21.  <u>Control of Tax Matters</u>.  Sellers assume all tax liabilities of MAE accruing to the date of transfer of the Shares.  Sellers shall control the prosecution or defense of any disputes with taxing authorities relating to such liabilities, and shall pay all costs relating thereto.

   IN WITNESS WHEREOF, the parties have caused this Agreement to be duly executed on the day and year stated below:

                                    SAWCO, CORPORATION

Date:_____, 1993         By_____

                                    ATTEST:



                                    _____
                                    SELLERS:

Date:_____, 1993         _____(SEAL)
                                    Michael S. Francis

Date:_____, 1993         _____(SEAL)
                                    Jenny C. Francis

Date: _____, 1993         _____(SEAL)
                                    Michael H. Schwartz


        [Signatures continued on next page.]


                        - 25 -

11/15/93   11:07   ☎412 788 0404          MIDATLANTIC PGH.                          ⓐ003

terms hereof without the express, written consent of the other party. Notwithstanding the foregoing, Sawco may disclose the existence of this Agreement to SBC and FruCon (CPC) in the course of its negotiations with such parties as it may determine in its sole discretion.

21.   <u>Control of Tax Matters</u>.   Sellers assume all tax liabilities of MAE accruing to the date of transfer of the Shares. Sellers shall control the prosecution or defense of any disputes with taxing authorities relating to such liabilities, and shall pay all costs relating thereto.

IN WITNESS WHEREOF, the parties have caused this Agreement to be duly executed on the day and year stated below:

SAWCO, CORPORATION

Date:_____, 1993          By_____

ATTEST:

_____

SELLERS:

Date:_____, 1993          _____(SEAL)
                                     Michael S. Francis

Date:_____, 1993          _____(SEAL)
                                     Jenny L. Francis

Date:  11-15  _____, 1993          _____(SEAL)
                                     Michael H. Schwartz

[Signatures continued on next page.]

- 25 -

JOINDER FOR PURPOSES OF
PARAGRAPHS 7, 17 AND 19(c)
HEREOF, TAMPELLA CORP

Date:_____, 1993          By_____

ATTEST:

_____

JOINDER FOR PURPOSES OF
THE FINAL SENTENCE OF
PARAGRAPH 11(d) HEREOF,
TAMPELLA SERVICES, INC.

Date:_____, 1993          By_____

ATTEST:

_____

JOINDER FOR PURPOSES OF
PARAGRAPH 11(d) HEREOF,
THE FINAL SENTENCE OF
TAMPELLA POWER CORPORATION

Date:_____, 1993          By_____

ATTEST:

_____

- 26 -

JOINDER FOR PURPOSES OF
PARAGRAPHS 7, 17 AND 19(c)
HEREOF, TAMPELLA CORP

Date:_____, 1993     By _____

ATTEST:


JOINDER FOR PURPOSES OF
THE FINAL SENTENCE OF
PARAGRAPH 11(d) HEREOF,
TAMPELLA SERVICES, INC.

Date:_____, 1993     By_____

ATTEST:


JOINDER FOR PURPOSES OF
PARAGRAPH 11(d) HEREOF,
THE FINAL SENTENCE OF
TAMPELLA POWER CORPORATION

Date:_____, 1993     By_____

ATTEST:


- 26 -

JOINDER FOR PURPOSES OF
PARAGRAPHS 7, 17 AND 19(c)
HEREOF, TAMPELLA CORP

Date:_____, 1993          By_____

                                    ATTEST:


                                    _____

JOINDER FOR PURPOSES OF
THE FINAL SENTENCE OF
PARAGRAPH 11(d) HEREOF,
TAMPELLA SERVICES, INC.

Date: *November 15*, 1993           By _____

                                    ATTEST:

                                    _____

JOINDER FOR PURPOSES OF
PARAGRAPH 11(d) HEREOF,
THE FINAL SENTENCE OF
TAMPELLA POWER CORPORATION

Date: *Nov. 15*, 1993               By _____

                                    ATTEST:

                                    _____

- 26 -

JOINDER FOR PURPOSES OF
PARAGRAPHS 7, 17 AND 19(c)
HEREOF, TAMPELLA CORP

Date:_____, 1993

By_____

ATTEST:

_____

JOINDER FOR PURPOSES OF
THE FINAL SENTENCE OF
PARAGRAPH 11(d) HEREOF,
TAMPELLA SERVICES, INC.

Date:_____, 1993

By_____

ATTEST:

_____

JOINDER FOR PURPOSES OF
PARAGRAPH 11(d) HEREOF,
THE FINAL SENTENCE OF
TAMPELLA POWER CORPORATION

Date:_____, 1993

By_____

ATTEST:

_____

MID-ATLANTIC ENERGY OF PA, INC.

By_____

Its _____

- 26 -

## SUMMONS

### IN THE CIRCUIT COURT OF WETZEL COUNTY, WEST VIRGINIA

MICHAEL S. FRANCIS, an individual,
WILLIAM E. CARPENTER, JR., in his
capacity as the executor of the estate of
JENNY L. FRANCIS, deceased, and
MICHAEL H. SCHWARTZ, an individual,

               Plaintiffs,

v.

                                   CIVIL ACTION NO.: 99-C-⌐¹-⌐

PENNPOWER, INC., a Delaware
corporation, and TAMROCK CORP.,
formerly known as TAMPELLA CORP., a
Finnish corporation,

               Defendants.

**To the above-named Defendant:**      **Tamrock Corp.**
                                     **c/o Corporation Trust Company, Registered Agent**
                                     **1209 Orange Street**
                                     **Wilmington, DE 19801**

IN THE NAME OF THE STATE OF WEST VIRGINIA, you are hereby summoned and required to serve upon **DANA F. EDDY,** plaintiffs' attorney whose address is **JACKSON & KELLY PLLC,** P. O. BOX 553, CHARLESTON, WEST VIRGINIA 25322, an answer, including any related counterclaim you may have, to the complaint filed against you in the above styled civil action, a true copy of which is herewith delivered to you. You are required to serve your answer within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint and you will be thereafter barred from asserting in another action any claim you may have which must be asserted by counterclaim in the above styled civil action.

Dated: November 10, 1999

                                  _Sharon Dulaney_
                            ~~Carol L. Hassig,~~ Clerk of Court
                            Sharon Dulaney

                                  By: _Cindy Adams_
                                    Deputy

C0325561.1

NOV 12  11 28 AM '99



1233 ORANGE STREET
WILMINGTON          DC 19801-1196

(302)777-0226

TO: MR. JOHN WALSH
    CONTROLLER
    346 PATTON DRIVE, S.W.
    TAMCORP, INC.
    ATLANTA                    GA   30336

4058 0648 6205 **FedEx**

4058 0648 6205

REF: SOP2671616/50390

**2DAY**                              FRI

cad # 0699583 23NOV99          Deliver by

TRK# 4058 0648 6205   FORM    26NOV99
                      0201

30336 -GA-US   **ATL**
RES            **F0 SYVA**

## CSC  The United States Corporation Company
### 1013 Cenr.e Road, Wilmington, DE, 1980. 1297
### (302) 636-5400

United States Corporation Company                    The Prentice-Hall Corporation System, Inc.

## NOTICE OF SERVICE OF PROCESS

---

**Date Processed:** 18-NOV-99                 **Transmittal #:** DE0795718P          ALL

**To:** GREGG RIDDLE, ESQ.                    **Redirect sent to:**
ORRICK HERRINGTON & SUTCLIFFE
THE OLD FEDERAL RESERVE BANK
400 SANSOME STREET
SAN FRANCISCO CA 94111

---

### TYPE OF REPRESENTATION:  Statutory

*We enclose the following documents which were served upon:*
                                     The Prentice-Hall Corporation System, Inc.
*as registered agent in   Delaware*        *for*
                                     PENNPOWER, INC. (**ID#:**  0430950)
*Documents were served on  18-NOV-99*   *via Certified Mail*          **ID#:  P 970 617 263**

---

**Title of Action:** MICHAEL S. FRANCES, ET AL, EXECUTOR          **Case #:** 99-C-71-M
          **vs.** PENNPOWER, INC. ET AL
        **Court:** CIRCUIT COURT, WETZEL COUNTY, WV
**Nature of Case:** Contract

---

| | | |
|---|---|---|
| _X_ Summons | ____ Notice of Mechanic's Lien | ____ A self-addressed stamped envelope enclosed |
| ____ Complaint | ____ Notice of Attorney's Lien | ____ Duplicate copies of the Notice and Acknowledgement enclosed |
| ____ Garnishment | ____ Notice of Default Judgment | |
| ____ Subpoena | | |

  _X_ **Other:**  LEGAL NOTICE, COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES, EXHIBIT 1

---

**Answer Due:** WITHIN 30 DAYS AFTER SERVICE
**Documents Sent:** Federal Express      **ID#:**
**Call Placed:** No call placed      **Spoke to:**  N/A
**Comments:** N/A

---

**Attorney for Claimant:**
    DANA F. EDDY
    JACKSON & KELLY PLLC
    1600 LAIDLEY TOWER, P.O. BOX 553
    CHARLESTON, WV
    (304) 340-1307

---

**Form Prepared By:** Ethel Strong

*Please acknowledge receipt of this notice and the enclosures by signing and returning the acknowledgement copy.*

### Original Client Copy - for your records

The information on this transmittal is provided for use in forwarding the attached documents.  This information does not constitute a legal opinion as to the facts or details of this action.  These should be obtained from the documents themselves.  The receiver of this transmittal is responsible for interpreting the documents and for taking appropriate action.  If you have received only a copy of the transmittal, you should be aware that the documents have been sent to the original addressee. You should contact that addressee for details or interpretations of the content of those documents.

KEN HECHLER
Secretary of State

MARY P. RATLIFF
Deputy Secretary of State

JAN CASTO
Deputy Secretary of State

CATHERINE FREROTTE
Executive Assistant

Telephone: (304) 558-6000
Corporations: (304) 558-8000
FAX: (304) 558-0900
e-mail: vhaught@secretary.state.wv.us



# STATE OF WEST VIRGINIA

### SECRETARY OF STATE

Building 1, Suite 157-K
1900 Kanawha Blvd., East
Charleston, WV 25305-0770

WILLIAM H. HARRINGTON
Chief of Staff

JUDY COOPER
Director, Administrative Law

Penney Barker
Supervisor, Corporations

(Plus all the volunteer
help we can get)

# LEGAL NOTICE

November 12, 1999

Civil Action  99-C-71-M

PennPower, Inc.
Prentice Hall Corporation Systems
1013 Center Road
Wilmington, DE  19805

I am enclosing

| | |
|---|---|
| ____ summons | ____ original |
| ____ notice | ____ affidavit |
| ____ order | ____ answer |
| ____ petition | ____ cross-claim |
| ____ motion | ____ counterclaim |
| ____ interrogatories | ____ request |
| ____ suggestions | ____ demand |
| ____ subpoena duces tecum | ____ default judgement |
| _1_ summons and complaint | ____ complaint |
| ____ 3rd party summons & complaint | ____ notice of mechanic's lien |
| ____ summons returned from post office | ____ suggestee execution |
| ____ _____ | ____ _____ |

which was served on the Secretary at the State Capitol in his capacity as your statutory attorney-in-fact.
According to law, I have accepted service of process.

____ in your name and on your behalf.
____ in the name and on behalf of your corporation.
_X_ in the name and on behalf of your unauthorized foreign corporation.
____ in the name and on behalf of your authorized insurance company.
____ in the name and on behalf of

131585

Please note that this office has no connection whatsoever with the enclosed documents other than to accept service of process in your name and on your behalf as your attorney-in-fact. Please address any questions about these documents directly to the court or to the plaintiff's attorney, shown in the enclosed paper. Please, do not call the Secretary of State's Office.

Sincerely,

Vicki Haught
Supervisor

# SUMMONS

## IN THE CIRCUIT COURT OF WETZEL COUNTY, WEST VIRGINIA

MICHAEL S. FRANCIS, an individual,
WILLIAM E. CARPENTER, JR., in his
capacity as the executor of the estate of
JENNY L. FRANCIS, deceased, and
MICHAEL H. SCHWARTZ, an individual,

               Plaintiffs,

v.                                    CIVIL ACTION NO.: 99-C-⁊⁊-ᴹ

PENNPOWER, INC., a Delaware
corporation, and TAMROCK CORP.,
formerly known as TAMPELLA CORP., a
Finnish corporation,

               Defendants.

**To the above-named Defendant:**      **PennPower, Inc.
c/o Prentice Hall Corporation System Inc., Reg. Agent
1013 Center Road
Wilmington, DE 19805**

IN THE NAME OF THE STATE OF WEST VIRGINIA, you are hereby summoned and required to serve upon **DANA F. EDDY,** plaintiffs' attorney whose address is **JACKSON & KELLY PLLC,** P. O. BOX 553, CHARLESTON, WEST VIRGINIA 25322, an answer, including any related counterclaim you may have, to the complaint filed against you in the above styled civil action, a true copy of which is herewith delivered to you. You are required to serve your answer within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint and you will be thereafter barred from asserting in another action any claim you may have which must be asserted by counterclaim in the above styled civil action.

Dated: November 10, 1999

Sharon Dulaney
~~Carol L. Hussig~~, Clerk of Court
Sharon Dulaney

By Cindy Adams
      Deputy

C0325558.1

## IN THE CIRCUIT COURT OF WETZEL COUNTY, WEST VIRGINIA

MICHAEL S. FRANCIS, an individual,
  WILLIAM E. CARPENTER, JR., in his
  capacity as the executor of the estate of
  JENNY L. FRANCIS, deceased, and
  MICHAEL H. SCHWARTZ, an individual,

              Plaintiffs,

v.                              CIVIL ACTION NO.: 99-C-꓾ㄱ/-ᴍ

PENNPOWER, INC., a Delaware
  corporation, and TAMROCK CORP.,
  formerly known as TAMPELLA CORP., a
  Finnish corporation,

              Defendants.

### COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES

      For their respective complaint against the above-named defendants, the plaintiffs

MICHAEL S. FRANCIS, WILLIAM E. CARPENTER, JR., in his capacity as the executor of

the estate of JENNY L. FRANCIS, and MICHAEL H. SCHWARTZ, and each of them, allege

and aver:

### PARTIES

      1.    MICHAEL S. FRANCIS is an individual who is a resident of the

Commonwealth of Pennsylvania with his principal residence situated within Allegheny County

("Mr. Francis"). At times relevant to the matters set forth in the complaint, Mr. Francis was

a resident of the State of West Virginia with his principal residence situated within Kanawha

County.

2.      WILLIAM J. CARPENTER is an individual who is serving as the executor of the estate of JENNY L. FRANCIS who, at the time of her death, was a resident of the State of South Carolina ("Mr. Carpenter").   At times relevant to the matters set forth in the complaint, JENNY L. FRANCIS was a resident of the State of West Virginia with her principal residence situated within Kanawha County.

3.      MICHAEL H. SCHWARTZ is an individual who is, and at all times relevant to the matters set forth in the complaint was, a resident of the Commonwealth of Pennsylvania with his principal residence situated within Allegheny County ("Mr. Schwartz").

4.      PENNPOWER, INC., formerly known as SAWCO CORPORATION, is a business corporation organized under the laws of the State of Delaware which did business in the Commonwealth of Pennsylvania at offices or facilities situated in Williamsport, Pennsylvania, but which, at this time, does no business, has no principal office, and exists as a corporate entity solely for the purpose of defending the claims for relief set forth in this complaint ("PENNPOWER").

5.      TAMROCK, CORP., formerly known as TAMPELLA CORP., is a foreign corporation organized under, and existing pursuant to, the laws of Finland but which maintains, and at all times relevant to the matters set forth in this complaint maintained, offices or agents in the Commonwealth of Pennsylvania for purposes which include, but is not limited to, resolving its and PENNPOWER's liabilities to the plaintiffs in this civil action ("Tampella").

### JURISDICTION

6.      Pursuant to the provisions of W. Va. Code § 31-1-15 and W. Va. Code § 56-3-33, the Court has jurisdiction over the person of each of the defendants in that the

2

defendants have transacted business in this state by reason of their execution of a contract that has been, and is to be, performed in the State of West Virginia.

## VENUE

7.     This Court is a proper venue for the prosecution of the matters set forth in this complaint for the reason that the contractual obligations which are the subject matter of this civil action are required to be performed within this venue.

## CAUSE OF ACTION

8.     On or about the date of November 15, 1993, Mr. Francis, JENNY L. FRANCIS ("Ms. Francis"), and Mr. Schwartz, individually and collectively (the "Plaintiffs"), executed a STOCK OPTION AGREEMENT to which PENNPOWER was a party. A true copy of the STOCK OPTION AGREEMENT is attached to, and incorporated in, this complaint as Exhibit "1."

9.     The STOCK OPTION AGREEMENT related to the sale of the shares of stock of MID-ATLANTIC ENERGY OF PA, INC., a corporation duly organized under, and existing pursuant to, the laws of the State of West Virginia ("MAE").

10.     Before the date of the execution of the STOCK OPTION AGREEMENT, Mr. Francis, Ms. Francis, and Mr. Schwartz, collectively, held title to all the issued and outstanding shares of the stock of MAE.

11.     MAE was the general partner of PINEY CREEK LIMITED PARTNERSHIP which was a limited partnership organized pursuant to, and existing under, the laws of the Commonwealth of Pennsylvania ("Piney Creek").

12.     Piney Creek held title to a small power production facility situated in Piney Township, Clarion County, Pennsylvania (the "Project").

3

13.     By reason of the execution of the STOCK OPTION AGREEMENT, PENNPOWER was to acquire title to all the issued and outstanding shares of MAE ("Shares").

14.     As set forth in the provisions of the STOCK OPTION AGREEMENT, PENNPOWER held an option to purchase the Shares, and Mr. Francis, Ms. Francis, and Mr. Schwartz had the right to cause PENNPOWER to purchase the Shares.

15.     Pursuant to the provisions of the STOCK OPTION AGREEMENT, Mr. Francis, Ms. Francis, and Mr. Schwartz invoked their right to require PENNPOWER to purchase the Shares.

16.     Mr. Francis, Ms. Francis, and Mr. Schwartz did, in fact, transfer title to the Shares to PENNPOWER.

17.     Pursuant to the provisions of the STOCK OPTION AGREEMENT, the amount of $250,000 represented the final installment of the consideration for the Shares which was to be paid to Mr. Francis, Ms. Francis, and Mr. Schwartz when three conditions precedent were satisfied (the "Additional Payment").

18.     The first condition precedent was that the lender for the Project and Tampella had to execute a written agreement effectively releasing Tampella from a guaranty of the funding of cost overruns incurred by the Project at certain stages of the Project, including the commencement stage of its commercial operation and the correction stage of certain construction defects (the "First Condition").

19.     The second condition precedent was that the lender had to agree to permit reserve funds or revenues of Piney Creek to be used for the payment of certain operational and maintenance charges of the Project's operator which was, and remains, a subsidiary of Tampella (the "Second Condition").

4

20.     The third condition precedent was that no default was to be declared between the lender and Piney Creek requiring additional capital contributions from the remaining partners of Piney Creek by reason of Piney Creek's correction of an error that had resulted in an organizational cost being improperly listed as an account receivable from MAE (the "Third Condition").

21.     In the express provisions of the STOCK OPTION AGREEMENT, Tampella guaranteed the payment of the Additional Payment by PENNPOWER to Mr. Francis, Ms. Francis, and Mr. Schwartz and evidenced its guaranty by signing the STOCK OPTION AGREEMENT.

22.     To the date of the filing of this complaint, PENNPOWER has not made the Additional Payment.

## CLAIMS FOR RELIEF

### FIRST COUNT
(Declaratory Relief)

23.     The Plaintiffs incorporate by this reference each and every allegation set forth in paragraphs 6 through 22, inclusive, of this complaint as though the allegations were fully set forth in this paragraph.

24.     The Plaintiffs are informed and, therefore, believe that the First Condition has been satisfied, or should be deemed to be satisfied, by reason of a sale of PENNPOWER's shares of stock of MAE to Colmac Clarion, Inc., in July of 1997.

25.     The Plaintiffs are informed and, therefore, believe that the Second Condition has been satisfied, or should be deemed to be satisfied, by reason of a sale of PENNPOWER's shares of stock of MAE to Colmac Clarion, Inc., in July of 1997.

5

26. The Plaintiffs are informed and, therefore, believe that the Third Condition has been satisfied, or should be deemed to be satisfied, by reason of a sale of PENNPOWER's shares of stock of MAE to Colmac Clarion, Inc., in July of 1997.

27. To the extent that any one of the First Condition, the Second Condition, or the Third Condition has not been formally or technically satisfied, the Plaintiffs believe that, if PENNPOWER or Tampella had acted in good faith and with due diligence, the conditions could and would have been formally or technically satisfied by this time.

28. An implied covenant in the STOCK OPTION AGREEMENT was that SAWCO or Tampella would act in good faith toward, and would fairly deal with, the Plaintiffs requiring, therefore, that PENNPOWER or Tampella, with all due diligence and commitment, would cause the First Condition, the Second Condition, and the Third Condition to be fully and completely satisfied at the earliest possible date.

29. The Plaintiffs request the declaration of this Court with respect to the rights of the parties under the STOCK OPTION AGREEMENT including, but not limited to, a declaration that the conditions precedent to the Additional Payment have been or should have been satisfied and that the Additional Payment is due and owing by PENNPOWER to the Plaintiffs at this time.

## SECOND COUNT
### (Breach of Contract)

30. The Plaintiffs incorporate by this reference each and every allegation set forth in paragraphs 6 through 22, inclusive, and paragraphs 24 through 29, inclusive, of this complaint as though the allegations were fully set forth in this paragraph.

31.     Notwithstanding its request for a declaration of the parties' respective rights, the Plaintiffs affirmatively allege that the Additional Payment is due and owing by SAWCO to the plaintiffs at this time and that PENNPOWER has refused to make the Additional Payment notwithstanding the Plaintiffs' demand for the Additional Payment.

32.     Accordingly, PENNPOWER has breached its contractual obligations to the Plaintiffs.

33.     Plaintiffs have been damaged by the actions and conduct of PENNPOWER in an amount equal to the Additional Payment plus accrued, and additionally accruing, interest and incurred, and any additionally incurred, expenses of collection.

### THIRD COUNT
### (Breach of Contract)

34.     The Plaintiffs incorporate by this reference each and every allegation set forth in paragraphs 6 through 22, inclusive, and paragraphs 24 through 29, inclusive, of this complaint as though the allegations were fully set forth in this paragraph.

35.     Tampella has guaranteed the payment by PENNPOWER of the Additional Payment.

36.     PENNPOWER has refused to pay the Additional Payment.

37.     Accordingly, Tampella is obligated to pay to the Plaintiffs the Additional Payment plus accrued, and additionally accruing, interest and incurred, and any additionally incurred, expenses of collection.

## FOURTH COUNT
### (Breach of the Covenant of Good Faith and Fair Dealing)

38.    The Plaintiffs incorporate by this reference each and every allegation set forth in paragraphs 6 through 22, inclusive, and paragraphs 24 through 29, inclusive, of this complaint as though the allegations were fully set forth in this paragraph.

39.    If the Court declares that the First Condition, the Second Condition, and the Third Condition (the "Conditions") have not been fulfilled or should not be deemed to be fulfilled, this declaration shall have necessarily resulted from the failure of PENNPOWER and Tampella to fulfill the Conditions.

40.    Pursuant to the STOCK OPTION AGREEMENT, PENNPOWER and Tampella, and each of them, had an obligation to perform the express covenants of the agreement in good faith and in fairness to the Plaintiffs.

41.    PENNPOWER and Tampella have, in fact, made no attempt to satisfy the Conditions and, indeed, may have fashioned or manipulated the sale of the stock of MAE in a manner that purposefully avoided the satisfaction of the Conditions.

42.    PENNPOWER and Tampella have taken actions to prevent the Plaintiffs from receiving the Additional Payment, including, but not limited to, refusing to inform the Plaintiffs regarding the sale of the shares of MEA and refusing to divulge the terms and conditions of the sale.

43.    PENNPOWER and Tampella have failed to act in good faith and in fairness to the Plaintiffs in contravention of the implied covenant in the STOCK OPTION AGREEMENT to do so with respect to fulfilling the Conditions.

44.    The Plaintiffs have been injured by reason of the breach of the covenant of good faith and fair dealing and, as a result, PENNPOWER and Tampella, and each of them, is obligated to pay to the Plaintiffs an amount equal to the Additional Payment plus accrued,

8

and additionally accruing, interest and incurred, and any additionally incurred, expenses of collection.

WHEREFORE, the Plaintiffs, and each of them, hereby pray for the following relief with respect to the complaint:

1.     That with respect to the First Count, the Court enter its judgment declaring that all conditions precedent to the Additional Payment have been, or should have been, satisfied, and that the Additional Payment is, at this time, due and owing to the Plaintiffs, and each of them, by PENNPOWER;

2.     That with respect to the Second Count, the Court enter its judgment in favor of the Plaintiffs and against PENNPOWER awarding damages in the amount of $250,000 together with pre-judgment and post-judgment interest at the maximum allowable legal rate and assessing any and all allowable costs of this action, including fees and expenses of attorneys;

3.     That with respect to the Third Count, the Court enter its judgment in favor of the Plaintiffs and against Tampella awarding damages in the amount of $250,000 together with pre-judgment and post-judgment interest at the maximum allowable legal rate and assessing any and all allowable costs of this action, including fees and expenses of attorneys;

4.     That with respect to the Fourth Count, the Court enter its judgment in favor of the Plaintiffs and against each of Tampella and PENNPOWER awarding damages in the amount of $250,000 together with pre-judgment and post-judgment interest at the maximum allowable legal rate and assessing any and all allowable costs of this action, including fees and expenses of attorneys; and

5.   That with respect to all counts of the complaint, the Court award such other and further relief to the Plaintiffs as the Court deems to be just and proper.

**A TRIAL BY JURY IS DEMANDED AS TO ALL ISSUES TRIABLE TO A JURY.**

MICHAEL S. FRANCIS, an individual, WILLIAM E. CARPENTER, JR., in his capacity as executor for the estate of JENNY L. FRANCIS, deceased, and MICHAEL H. SCHWARTZ, an individual

By Counsel

DANA F. EDDY (W. Va. Bar # 4848)
SHAWN L. REED (W. Va. Bar # 6801)
**JACKSON & KELLY PLLC**
1600 Laidley Tower
P.O. Box 553
Charleston, WV 25322
(304) 340-1307

10

## STOCK OPTION AGREEMENT

THIS STOCK OPTION AGREEMENT, effective as of November 15, 1993 (the "Option Agreement"), is entered into by and among SAWCO CORPORATION, a Delaware corporation ("Sawco"), MID-ATLANTIC ENERGY OF PA, INC., a West Virginia corporation ("MAE") and MICHAEL S. FRANCIS, JENNY L. FRANCIS, and MICHAEL H. SCHWARTZ (hereinafter individually referred to as a "Seller" and collectively referred to as the "Sellers").

WHEREAS, Sellers own beneficially and of record those shares of capital stock of MAE as set forth opposite their respective individual names on Exhibit A attached hereto, which stock in the aggregate constitutes all of the issued and outstanding shares of MAE (collectively, the "Shares"); and

WHEREAS, MAE is the sole general partner of PINEY CREEK LIMITED PARTNERSHIP, a Pennsylvania limited partnership ("PCLP"), of which Sawco and its affiliate, TAMPELLA POWER CORPORATION, a Delaware corporation ("TPC"), are the sole limited partners; and

WHEREAS, PCLP owns a small power production facility situate in Piney Township, Clarion County, Pennsylvania ("Project"); and

WHEREAS, on or about November 3, 1993, TPC and Sellers executed a Memorandum of Agreement in Principle which outlined the terms of an option agreement under which TPC or its affiliate could acquire, or be obligated to acquire, the Shares from Sellers ("Letter of Intent"); and

WHEREAS, the parties hereto wish to set forth the terms and conditions as contemplated by the Letter of Intent.

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements contained herein, and other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the parties hereto, intending to be legally bound hereby, agree as follows:

1.   Recitals.  The foregoing recitals are incorporated into the body of this Agreement and made a part hereof.

2.   Right to Call Shares.

(a)  Grant.  Sellers hereby grant to Sawco, as the designee of TPC under the Letter of Intent, all the rights and obligations reserved to TPC thereunder (except for such obligations as are assumed by Tampella under Paragraphs 7, 17 and 19(c) hereof), including, without limitation, the option to purchase from Sellers during the period commencing this date and extending to and including June 30, 1994 (the "Call Term") all, and not less than all, of the Shares (the "Call").

(b)  Consideration.  In consideration of the grant of the Call, and to induce same, Sawco is paying to Sellers contemporaneous with the execution of this Agreement, a option fee of $500,000 (allocated among Sellers in accordance with their relative interests in MAE as set forth on Exhibit A), which amount shall be applied against the first installment of the purchase price for the Shares when

- 2 -

and if acquired hereunder (either by Call or Put) and is otherwise nonrefundable.  The option fee is being paid by wire transfer to Sellers' designated account(s) at the Bank of Paden City, Paden City West Virginia.

(c)  <u>Call Purchase Price</u>.  The aggregate purchase price (the "Call Exercise Price") to be paid by Sawco for the Shares upon exercise of the Call is $1,355,000, payable (i) $500,000 by application of the option fee theretofore paid under subparagraph (b) above, (ii) $655,000 in guaranteed funds to Sellers (allocated among Sellers in accordance with their respective interests in MAE as set forth on Exhibit A), upon the closing on the Call, and (iii) the balance of $200,000 in guaranteed funds to Sellers (allocated as aforesaid) upon the earlier of (A) the sale of the limited partners' equity in PCLP, (B) a refinancing of the Project which produces excess cash (i.e. any amount by which the proceeds of such refinancing exceeds the sum of the payoff of the prior indebtedness and the costs incurred to effect the refinancing) at settlement to PCLP, but only to the extent of such excess cash less than $200,000 (with the balance of such $200,000, if any, to be paid on June 30, 1994) or (c) June 30, 1994.

(d)  <u>Nature</u>.  The grant of the Call is irrevocable and exclusive.

3.   <u>Right to Put Shares</u>.

(a)   <u>Grant</u>.  Sawco hereby grants to Sellers (acting together) the right to require Sawco to purchase at any time during the period commencing January 1, 1994, and extending to and including June 30, 1994 ("Put Term") all, and not less than all, of the Shares ("Put").

(b)   <u>Put Purchase Price</u>.  The aggregate purchase price ("Put Exercise Price") to be paid by Sawco for the Shares upon exercise of the Put is as follows:

(i)  If at the time of the exercise of the Put, all of the Conditions (hereinafter defined) have been satisfied, the Put Exercise Price shall be the same as the Call Exercise Price and paid in the same manner, each as described in Paragraph 2(c) above.

(ii) If at the time of the exercise of the Put, all of the Conditions are not satisfied, the Put Exercise Price shall be $1,105,000, payable (A) $500,000 by application of the option fee theretofore paid under Paragraph 2(b) above, (B) $405,000 in guaranteed funds to Sellers (allocated among them in accordance with their relative interests in MAE as set forth on Exhibit A) upon the closing on the Put, and (C) the balance of $200,000 in accordance with the provisions of Paragraph 2(c)(iii) above.  An additional $250,000 shall be payable in guaranteed funds

(allocated as aforesaid) if and when all of the
Conditions have thereafter been satisfied.

   (ii)  The "Conditions" are:

   A.    The execution by Swiss Bank Corporation
("SBC") as lead lender to the Project of a written
agreement with TAMPELLA CORP, Tampere, Finland, a
Finnish corporation ("Tampella"), on terms which
require the payment or posting of no additional moneys
or recourse to SBC by PCLP, TPC, Sawco, Tampella, or
any of their affiliates (including, without limitation,
MAE after the acquisition of the Shares as contemplated
in this Option Agreement), to the effect that SBC will
cause a release of Tampella's entire $2,000,000 cost
overrun guaranty upon (aa) commercial conversion of the
Project and (bb) remediation of certain Project
construction defects (outlined in the SE Technologies
Deficiency Corrective Action Report dated August 13,
1993 and currently in possession of all parties hereto)
by the contractor or Sawco within a budget reasonably
determined by SBC.

   B.    The agreement by SBC, on terms reasonably
acceptable to Sawco, to release PCLP funds and/or
Project operating revenues for the payment of the
Project operator's O&M charges from and after March 6,
1993 (other than Subordinated O&M charges which will be

- 5 -

paid pursuant to the terms of applicable Project documents).

     c.   That by the date when the latter of the events described in clauses (A) or (B) has occurred, SBC has not asserted a default or breach by PCLP of PCLP's Credit Agreement with SBC as a result of the reclassification of PCLP's account receivable from MAE as further described in Paragraph 10, which would require TPC, Sawco, Tampella or any of their affiliates (including, without limitation, MAE after the acquisition of the Shares as contemplated in this Option Agreement) to provide additional capital to PCLP to eliminate such account receivable.

4.   <u>Exercise of Call or Put</u>.

     (a)  Subject to the conditions set forth herein, the Call or Put may be exercised by Sawco or Sellers, as the case may be, for all and not less than all of the Shares during the Call Term or Put Term, as the case may be.  In the event Sawco or Sellers elect to exercise the Call or Put, as the case may be, Sawco or Sellers, as the case may be, shall send a written notice of exercise to Sellers or Sawco, as the case may be, specifying the place and date (not later than five (5) business days nor earlier than three (3) business days from the date such notice is mailed) of such closing.

(b)  Sellers, and each of them, represent(s) that he or she has not, and prior to the expiration of the Call or Put will not, take any action which would have the effect of preventing or disabling Sellers from delivering the Shares to Sawco upon exercise of the Call or otherwise preventing or disabling Sellers from performing their obligations or Sawco from exercising its rights under this Call.  Without limiting the generality of the foregoing, Sellers agree not to (i) take any action which would have the effect of changing any of Sellers' voting or equity interests in MAE, or (ii) permit MAE, (A) to issue any shares of its capital stock, or issue or create any warrants, obligations, subscriptions, options, or convertible securities, or other commitments under which any additional shares of its capital stock may be authorized or issued, or transferred from treasury or (B) sell, dispose or otherwise transfer any of its interest in PCLP.

5.  <u>Delivery</u>.  At the closing on the Put or Call hereunder, (a) Sawco shall pay Sellers the applicable portion of the Call or Put Exercise Price for the Shares and (b) each Seller shall deliver to Sawco stock certificates duly executed in transferable form (or with appropriate stock powers attached) representing such Seller's respective shares so purchased.

6.  <u>Affirmative Covenants of Sellers</u>.

(a)  Commencing on the date hereof and extending to an through December 31, 1993, Sellers shall cause MAE to work

- 7 -

cooperatively with Sawco and use best efforts to resolve
major Project issues in a manner reasonably satisfactory to
Sawco, such efforts to include (by way of illustration and
not limitation):

    (i)  negotiating a settlement with FruCon of all
contractor issues in a manner consistent with FruCon's
September 8, 1993 settlement offer (with such additions
and modifications as are reasonably acceptable to both
MAE and Sawco);

    (ii) negotiating a settlement with SBC which
allows for a release of PCLP funds and/or Project
operating revenues to pay operating costs to facilitate
payment of Project costs such as those outlined in
Paragraph 7(a), (b) and (c), under terms and conditions
reasonably acceptable to MAE and Sawco;

    (iii) achieving the Conditions;

    (iv) resolving the Project's ash problem; and

    (v)  producing an agreement by all necessary
parties with respect to the increase in Project output
by an additional 3 megawatts or additional total
megawatt hours per annum with up to 100% capacity
factor at 30 megawatt capacity.

During such period, Sellers shall continue to devote their
time and attention to MAE and PCLP affairs in a manner
consistent with past practice.

(b)  Commencing January 1, 1994, and thereafter for the duration of this Agreement, Sellers shall cause MAE to serve as Sawco's agent, and take actions relating to PCLP management only as directed by Sawco.

(c)  Commencing this date and extending for the duration of this Agreement, Sellers shall cause MAE and in turn PCLP to conduct business only in the ordinary course of business.

(d)  Upon closing on the Put or Call hereunder, (i) the assets of MAE will consist solely of (A) an equity investment in PCLP (as general partner) having a net cost to MAE of $155,000 and (B) any indebtedness due from, or claim against, PCLP then held or at any time held by MAE or any affiliate of MAE since the inception of PCLP and not theretofore unconditionally satisfied and (ii) the liabilities will consist solely of those attributable to PCLP as then reflected on the books and records of PCLP for which MAE is contingently liable as general partner as identified in Paragraph 7(a), (b) and (c).  Upon such closing and transfer of Shares, MAE shall have no outstanding contractual commitments or obligations to any party other than those obligations to PLCP outlined in the SBC Credit Agreement and related documents dated as of October 1, 1990, as amended.

(e)  From the date hereof to the effective date of transfer of the Shares, Sellers shall take all actions

- 9 -

necessary to maintain MAE's "S" Corporation status as further described in Paragraph 11(l).

7.  Affirmative Covenants of Tampella.

(a)  On or before December 1, 1993 Tampella shall cause payment of certain scheduled and accrued third-party liabilities of PCLP (on behalf of PCLP and the Project) to include Orrick Harrington, Dewey Ballentine, Deloitte & Touche and legal costs for the FruCon (CPC) arbitration, such liabilities currently total approximately $162,000, as well as third-party liabilities of PCLP which are reasonably and necessarily incurred for fair value, from and after the date hereof and continuing for the duration of this Agreement.

(b)  From the date hereof and extending until transfer of the Shares, Tampella shall cause payment of Project G&A costs to MAE in the budgeted amount of $13,333 per month. Fractional months' G&A will be prorated.

(c)  From the date hereof, Tampella shall indemnify Sellers from and against liabilities to FruCon (CPC) or SBC for legal (White & Case) or technical (R.W. Beck) expenses related to the Project which may be adjudicated against Sellers with respect to a court-determined piercing of the MAE corporate veil and as a result of MAE's activities as the general partner of PCLP.  Such indemnification shall not, however extend to liabilities arising out of a breach of MAE of this Agreement.  The defense of any indemnified

liability issue hereunder (including the defense of any veil-piercing issue) shall be controlled and paid for by Tampella.  Additionally, from and after this date, Sawco and each affiliate thereof (i.e. Tampella Services, Inc. and TPC) hereby waives any claim or action against MAE or Sellers for actions taken at any time by MAE or Sellers in the carrying out of MAE's obligations as general partner of PCLP which are taken in good faith and not in violation of this Agreement.

(d)  The parties understand and agree that the costs or indemnified liabilities which Tampella shall cause to be paid under this Paragraph 7 are costs or liabilities of PCLP and that, if moneys are advanced by Tampella, or by Tampella through its affiliate, to PCLP and/or MAE for payment of these costs or liabilities, then, if and when funds are made available to PCLP and/or MAE to cover such costs or liabilities, or any of them, MAE shall cause those moneys to be paid over to Tampella or its affiliate, as appropriate, as reimbursement.

8.  <u>Conditions of Closing on Put or Call Option</u>.  The following shall be conditions of closing on the Put or Call hereunder:

(a)  Repayment to MAE of any shareholder loans and advances due from affiliates of MAE; and

(b)  MAE shall have made no distribution to Sellers during the period commencing January 1, 1993, and extending

- 11 -

to immediately prior to the transfer of the Shares.  The parties acknowledge that immediately prior to such transfer MAE shall then make a distribution to Sellers as described in Paragraph 9 below.  In no event and at no time shall MAE have distributed or assigned to Sellers or to any other party, any claim against, or obligation of, PCLP other than that management fee described in Paragraph 7(b) above for the current monthly period, which as of closing on the Put or Call hereunder is accrued but unpaid.

9.   <u>Distribution of Certain Assets by MAE</u>.  Between the time of the notice of exercise and closing on the Put or Call hereunder, but not otherwise, Sellers shall have the right to cause MAE to distribute to them as the shareholders thereof, any cash of MAE and/or indebtedness due MAE from affiliates of MAE other than PCLP, with the sole exception of a current period fee described in Paragraph 7(b), which as of closing on the Put or Call hereunder shall have been accrued but unpaid.

10.   <u>Financial Representations and Covenants of Sellers</u>.

(a)  The parties acknowledge that PCLP has currently reflected on its books of account an account receivable in the amount of approximately $409,000.  MAE and Sellers advise and represent and Sawco acknowledges that the classification of such amount as an account receivable is erroneous and that such amount should be reclassified as capitalized organization costs of PCLP.

(b)  The parties acknowledge that by law the taxable year of MAE shall terminate with the transfer of the Shares as contemplated herein and consequently Sellers shall report the items of income and expense of MAE from the inception of its fiscal year to the date of such transfer ("Stub Period").  Secondly, the parties agree that if lawful, they will cause the Partnership to allocate to MAE for inclusion in the Stub Period, such percentage of the Partnership's net income/loss for the Stub Period (or each portion thereof) as established under the applicable provisions of the PCLP partnership agreement.

11.  <u>Representations and Warranties of Sellers</u>.  Each Seller hereby represents and warrants (which shall survive closing on the Put or Call hereunder and any investigation by Sawco and affiliates), and at the closing for the purchase of the Shares by Put or Call each Seller will represent and warrant (which shall survive as aforesaid), that:

(a)  Seller is the holder of record of the number of Shares transferred to Sawco at the closing, and such Shares are free and clear of all liens, encumbrances, voting agreements, shareholder agreement, equities, preemptive rights, options, claims, charges and restrictions whatsoever;

(b)  Such Seller has the power, right, capacity and authority to execute and deliver this Option Agreement, and to sell, transfer and deliver her or his respective Shares

- 13 -

to Sawco in accordance with the terms, covenants and conditions of this Option Agreement;

(c)  This Option Agreement has been duly and validly executed and delivered by such Seller and constitutes a valid and binding agreement of the Seller enforceable against Seller in accordance with its terms;

(d)  Such Seller is not subject to or bound by any agreement or judgment, order, writ, prohibition, injunction or decree of any court or other governmental body which would prevent the execution, delivery or performance of this Option Agreement, or the sale, transfer or delivery of the Shares to Sawco as contemplated hereby;

(e)  The Shares so transferred by such Seller have been duly authorized, validly issued, fully paid and are nonassessable;

(f)  MAE owns the sole general partner interest in PCLP and such is free and clear of all liens, encumbrances and, to the best knowledge of Sellers, any claims whatsoever.

(g)  MAE is duly incorporated and organized and validly existing as a corporation in good standing under the laws of its jurisdiction of incorporation, with full corporate power to own or lease and operate its assets and to carry on its business in the manner in which such business is now being conducted, and is in good standing and duly qualified as a foreign corporation in each other jurisdiction where its failure to obtain and maintain such good standing and

- 14 -

qualification would have a material and adverse effect on
its conditions (financial or otherwise), assets or business.

(h)  MAE is authorized to issue 20,000 shares of common
shares, each with a par value of $10, of which 6,700 shares
are issued and outstanding.  The name of and number of
shares owned by each of the shareholders of record of such
corporation as of the date hereof and as of the closing date
on the Put or Call is set forth on Exhibit A.  No person,
other than as shown on Exhibit A, owns of record or
beneficially any of the capital stock of MAE and all of such
capital stock will be owned by the persons set forth on
Exhibit A on the closing date on the Put or Call.  The
capital stock shown on Exhibit A comprises all of the issued
and outstanding capital stock of MAE.  All of the capital
stock is validly issued and outstanding, fully paid and
nonassessable, and no such capital stock was issued in
violation of preemptive rights, nor does any shareholder
have a claim to preemptive rights.  There is not outstanding
any option, warrant or right to purchase from MAE or from
any shareholder of MAE, or to require MAE to issue, any
capital stock or other security convertible into or
exchangeable for shares of such stock or any other security
of MAE.

(i)  Except as specified in Paragraph 10, the Forms
1120S for MAE for 1990 through 1992, inclusive, the Forms
1065 for PCLP for 1990 through 1992, inclusive, the state

- 15 -

tax returns filed by MAE for such period, the audited financial statements for PCLP and consolidated financial statements for MAE and PCLP for fiscal years 1990 through 1992, inclusive, and the internally generated profit and loss statement for MAE and for PCLP for the period January 1, 1993, through September 30, 1993 (collectively "Financial Statements"), heretofore provided to counsel to Sawco are true, correct and complete.  The Financial Statements fairly and accurately present the financial condition of the relevant entity at the respective dates thereof and for the period covered thereby.  Each of the financial Statements has been prepared from the books and records of the respective entity based upon generally accepted accounting principles consistently applied.

(j)  Immediately prior to the closing date on the Put or Call, those assets of MAE described in Paragraph 9 shall have been distributed by MAE to Sellers (and no others), and the remaining assets and the liabilities of MAE shall be limited to those described in Paragraph 6(d) above.  All of the costs of such distributions and assignments (including, but not limited to, Federal and state income taxes, sales, use and transfer taxes, attorneys' fees and other costs) shall be borne by Sellers.

(k)  Except as set forth in Exhibit B attached hereto and incorporated herein by reference, since January 1, 1993, MAE and PCLP have conducted business only in the ordinary

- 16 -

course of business, have made no material alteration in the manner in which MAE or PCLP keeps its books, accounts or records or in the accounting practices therein reflected, and has not made any material amendment or termination of any material contract or obligation of MAE or PCLP.

(l)  MAE has duly filed all tax returns required to be filed by it.  From the inception of its corporate existence to date, MAE has qualified and does qualify as an "S" corporation as defined in Section 1361(a) of the Internal Revenue Code of 1986, as amended, and has maintained and does maintain effective "S" elections with all applicable federal and state taxing authorities which recognize "S" Corporation status.

(m)  Except as set forth on Exhibit C, there is no action, suit, arbitration, proceeding, grievance, or investigation pending, or to the best knowledge of Sellers overtly threatened, before any court, tribunal, panel, master or governmental agency, authority or body in which MAE or PCLP is a party.

(n)  Sellers have disclosed to Sawco all facts of a material nature known to each of them (after reasonable investigation and inquiry) regarding MAE and PCLP.

(o)  Attached hereto as Exhibit D is a listing of all correspondence between MAE and SBC for the period August 8, 1989 through September 30, 1993, which listing was derived from a review of the correspondence file.  The

- 17 -

correspondence file, as delivered to counsel for Sawco and as summarized in Exhibit D contained and, as updated to the date hereof, contains all material correspondence between MAE and SBC.  All material correspondence which shall or should have been added to the SBC correspondence file since September 30, 1993 and to date has been delivered contemporaneously with the execution hereof.

(p)  Attached hereto as Exhibit E is a listing of all correspondence between MAE and Frucon (CPC) for the period June 7, 1990 through  September 30, 1993, which listing was derived from a review of the correspondence file.  The correspondence file, as delivered to counsel for Sawco and as summarized in Exhibit E contained and, as  updated to the date hereof, contains all material correspondence between MAE and Frucon (CPC).  All material correspondence which shall or should have been added to the Frucon (CPC) correspondence file since September 30, 1993 and to date has been delivered contemporaneously with the execution hereof.

(q)  Attached hereto as Exhibit F is a listing of all documents submitted to Sawco and its counsel by Shareholders in response to counsel's request for documents submitted September 27, 1993 as part of its due diligence review.  To the best knowledge of Sellers, (i) the documents listed are all of the documents requested to be provided and the provision thereof is fully responsive to said document

- 18 -

request and (ii) the documents listed are true, correct and complete.

12.   <u>Representations and Warranties of Sawco</u>.  Sawco hereby represents and warrants to Sellers that (a) it has full corporate power and authority to execute and deliver this Option Agreement and to consummate the transactions contemplated hereby; (b) the execution and delivery of this Option Agreement and the consummation of the transactions contemplated hereby have been duly and validly authorized by its Board of Directors and no other corporate proceedings on its part are necessary to authorize this Option Agreement or to consummate the transactions so contemplated; (c) this Option Agreement has been duly and validly executed and delivered by it and constitutes a valid and binding agreement of it enforceable against it in accordance with its terms; and (d) no affiliate of it has any claim or cause of action against MAE or Sellers.

13.   <u>Termination</u>.  Except with respect to the representations and warranties set forth in Paragraphs 11 and 12 hereof and to covenants set forth in Paragraphs 6 and 7 hereof, all of which shall be without limitation, this Option Agreement, and the obligations of Sellers, Tampella and Sawco hereunder, shall automatically terminate upon June 30, 1994, at 5:00 p.m., EDT, unless such termination shall be sooner accomplished by closing on the Put or Call hereunder.

14.   <u>Restrictive Legend</u>.  Upon the execution of this Agreement, Sellers agree to place, or cause to be placed, a

- 19 -

legend on the certificates representing the Shares, substantially to the following effect:

> THE SALE, TRANSFER, ASSIGNMENT, PLEDGE OR ENCUMBRANCE OF THE SHARES REPRESENTED BY THIS CERTIFICATE IS SUBJECT TO THE TERMS AND CONDITIONS OF A STOCK OPTION AGREEMENT, DATED AS OF NOVEMBER 15, 1994, BY AND AMONG SAWCO CORPORATION, MICHAEL S. FRANCIS, JENNY L. FRANCIS AND MICHAEL H. SCHWARTZ, A COPY OF WHICH AGREEMENT IS ON FILE WITH THE SECRETARY OF THE COMPANY.

So long as this Option Agreement is in effect, Sellers further agree to cause MAE to place a stop transfer order on the books and records of MAE with respect to the transfer of any Shares other than pursuant to the terms and conditions of this Option Agreement.

15. <u>Specific Performance</u>.  Sellers acknowledge that the Option granted to Sawco herein, and the Shares covered hereby, are unique and that Sawco will have no adequate remedy at law if any of Sellers breaches any covenant contained herein or fails to perform any of such Seller's obligations under this Option Agreement.   The parties agree that  Sawco, on the one hand and Sellers on the other shall have the right, in addition to any other rights which  either such party may have, to specific performance and equitable injunctive relief if  either such party shall fail or threaten to fail to perform  its or their

obligations to purchase or sell Shares under this Option Agreement.

16.  <u>Condition Precedent</u>.  It is absolute condition of the obligations of Tampella and Sawco under the provisions of this Option Agreement that each and all of Sellers sign this Option Agreement.

17.  <u>Payment Guaranty</u>.  Tampella hereby guarantees to Sellers the payment of the Call Exercise Price or the Put Exercise Price, as applicable, due them from Sawco under this Agreement.

18.  <u>Right of Offset</u>.  Any claims of Tampella or Sawco arising hereunder against Sellers and/or MAE as a result of the breach by Sellers and/or MAE of any representation, warranty covenant or agreement of Sellers and/or MAE set forth herein shall be satisfied first by a right of set-off against moneys then due and owing hereunder by Tampella and/or Sawco to Sellers.

19.  <u>Miscellaneous</u>.

(a)  <u>Assignability</u>.  No party hereto shall assign any interest herein without the prior written consent of the other parties hereto, which shall not be unreasonably withheld.

(b)  <u>Validity</u>.  The invalidity or unenforceability of any provision of this Option Agreement shall not affect the validity or enforceability of any other provisions of this

- 21 -

Option Agreement, which shall remain in full force and effect.

(c)   Further Assurances.   Tampella, Sawco and Sellers will execute and deliver all such further documents and instruments and take all such further action as may be necessary in order to consummate the transactions contemplated hereby.

(d)   Third Parties.   Nothing expressed or implied in this Agreement is intended or shall be construed to confer upon or give to any third party any rights or remedies by virtue of this Agreement or any exercise or nonexercise of the Put and Call granted hereby.

(e)   Amendments or Extension.   This Option Agreement may not be modified, amended, altered or supplemented except upon the execution and delivery of a written agreement executed by all the parties hereto.   This Option Agreement may be extended upon the mutual written agreement of all of the parties hereto.

(f)   Notices.   Except as otherwise expressly provided herein, all notices, requests, claims, demands and other communications hereunder shall be in writing and shall be furnished by hand delivery, by telegram or telex, or by mail (registered or certified, postage prepaid, return receipt requested) to Sellers and Sawco at the addresses set forth below.   Any such notice shall be deemed duly given upon the date it is actually received by the addressee to whom notice

- 22 -

is intended to be given or it is actually delivered at the
address of the addressee as shown below:

| | |
|---|---|
| If to Sellers: | Michael S. & Jenny L. Francis<br>401-A Bibby Street<br>Charleston, WV  25301 |
| | Michael H. Schwartz<br>1800 Beechwood Boulevard<br>Pittsburgh, PA  15217 |
| With a copy to: | Lee O. Hill, Esquire<br>Jackson & Kelly<br>1600 Laidley Tower<br>P.O. Box 553<br>Charleston, WV  25322 |
| If to Sawco: | Hannu Rusanen<br>Tampella Power Corporation<br>2600 Reach Road<br>P.O. Box 3308<br>Williamsport, PA  17701-0308 |
| With a copy to: | Michael G. Jarman, Esquire<br>McNees, Wallace & Nurick<br>100 Pine Street<br>P.O. Box 1166<br>Harrisburg, PA  17108-1166 |

The addresses set forth above may be changed by Sellers
or Sawco, as the case may be, upon furnishing to the other
party a notice of change of address in accordance with the
terms of this paragraph.  With respect to the notice to be
provided under Paragraph 4(a) hereof, each Seller hereby
irrevocably appoints and constitutes Michael S. Francis his
or her designated representative for purposes of
communicating Sellers' decision with respect to the exercise
of the Put.

(g)  Governing Law.  This Option Agreement shall be
governed by and construed in accordance with the substantive

- 23 -

law of the Commonwealth of Pennsylvania applicable to contracts made and to be performed in such state.

(h) <u>Counterparts</u>.  This Option Agreement may be executed in several counterparts, each of which shall be an original, but all of which together shall constitute one and the same agreement.

(i) <u>Effect of Headings</u>.  The section and paragraph headings herein are for convenience only and shall not affect the construction hereof.

(j) <u>Time of the Essence</u>.  The parties agree that time shall be of the essence in the performance of all obligations hereunder.

(k) <u>Successors and Assigns</u>.  This Option Agreement shall be binding upon and inure to the benefit of the parties, their heirs, personal representatives, respective successors and permitted assigns.

(l) <u>Integration</u>.  This Agreement (including the Exhibits hereto) constitutes the entire agreement between the parties (and their affiliates) regarding the subject matter hereof and replaces any prior agreements or understandings among the parties, including without limitation that contained in the Memorandum of Understanding effective September 13, 1990.

20. <u>Confidentiality</u>.  Neither the Sellers, or any of them, on one hand, or Sawco, on the other hand, shall disclose to any third party the nature or existence of this Agreement or the

terms hereof without the express, written consent of the other party.  Notwithstanding the foregoing, Sawco may disclose the existence of this Agreement to SBC and FruCon (CPC) in the course of its negotiations with such parties as it may determine in its sole discretion.

21.  <u>Control of Tax Matters</u>.  Sellers assume all tax liabilities of MAE accruing to the date of transfer of the Shares.  Sellers shall control the prosecution or defense of any disputes with taxing authorities relating to such liabilities, and shall pay all costs relating thereto.

IN WITNESS WHEREOF, the parties have caused this Agreement to be duly executed on the day and year stated below:

SAWCO, CORPORATION

Date:_____, 1993        By_____

                                   ATTEST: _____

                                   _____

                                   SELLERS:

Date:_____, 1993        _____(SEAL)
                                   Michael S. Francis

Date:_____, 1993        _____(SEAL)
                                   Jenny L. Francis

Date: _____, 1993       _____(SEAL)
                                   Michael H. Schwartz

**[Signatures continued on next page.]**

- 25 -

terms hereof without the express, written consent of the other party. Notwithstanding the foregoing, Sawco may disclose the existence of this Agreement to SBC and FruCon (CPC) in the course of its negotiations with such parties as it may determine in its sole discretion.

21. <u>Control of Tax Matters</u>. Sellers assume all tax liabilities of MAE accruing to the date of transfer of the Shares. Sellers shall control the prosecution or defense of any disputes with taxing authorities relating to such liabilities, and shall pay all costs relating thereto.

IN WITNESS WHEREOF, the parties have caused this Agreement to be duly executed on the day and year stated below:

SAWCO, CORPORATION

Date:_____, 1993        By_____
                                   _____
                                   ATTEST:

                                   _____
                                   _____
                                   SELLERS:

Date:_____, 1993        _____(SEAL)
                                   Michael S. Francis

Date:_____, 1993        _____(SEAL)
                                   Jenny L. Francis

Date: _____, 1993       _____(SEAL)
                                   Michael H. Schwartz

**[Signatures continued on next page.]**

- 25 -

terms hereof without the express, written consent of the other party.  Notwithstanding the foregoing, Sawco may disclose the existence of this Agreement to SBC and FruCon (CPC) in the course of its negotiations with such parties as it may determine in its sole discretion.

21.  <u>Control of Tax Matters</u>.  Sellers assume all tax liabilities of MAE accruing to the date of transfer of the Shares.  Sellers shall control the prosecution or defense of any disputes with taxing authorities relating to such liabilities, and shall pay all costs relating thereto.

IN WITNESS WHEREOF, the parties have caused this Agreement to be duly executed on the day and year stated below:

SAWCO, CORPORATION

Date:_____, 1993        By_____

ATTEST:

_____

SELLERS:

Date:_____, 1993        _____(SEAL)
                                    Michael S. Francis

Date:_____, 1993        _____(SEAL)
                                    Jenny L. Francis  her atty-in fact

Date: _____, 1993       _____(SEAL)
                                    Michael H. Schwartz

**[Signatures continued on next page.]**

- 25 -

terms hereof without the express, written consent of the other party.  Notwithstanding the foregoing, Sawco may disclose the existence of this Agreement to SBC and FruCon (CPC) in the course of its negotiations with such parties as it may determine in its sole discretion.

21.  <u>Control of Tax Matters</u>.  Sellers assume all tax liabilities of MAE accruing to the date of transfer of the Shares.  Sellers shall control the prosecution or defense of any disputes with taxing authorities relating to such liabilities, and shall pay all costs relating thereto.

IN WITNESS WHEREOF, the parties have caused this Agreement to be duly executed on the day and year stated below:

SAWCO, CORPORATION

Date:_____, 1993      By_____

ATTEST:

_____

SELLERS:

Date:_____, 1993      _____(SEAL)
                                 Michael S. Francis

Date:_____, 1993      _____(SEAL)
                                 Jenny L. Francis

Date: __11-15_____, 1993   _____(SEAL)
                                 Michael H. Schwartz

[Signatures continued on next page.]

- 25 -

JOINDER FOR PURPOSES OF
PARAGRAPHS 7, 17 AND 19(c)
HEREOF, TAMPELLA CORP

Date:_____, 1993          By_____

ATTEST:

_____

JOINDER FOR PURPOSES OF
THE FINAL SENTENCE OF
PARAGRAPH 11(d) HEREOF,
TAMPELLA SERVICES, INC.

Date:_____, 1993          By_____

ATTEST:

_____

JOINDER FOR PURPOSES OF
PARAGRAPH 11(d) HEREOF,
THE FINAL SENTENCE OF
TAMPELLA POWER CORPORATION

Date:_____, 1993          By_____

ATTEST:

_____

- 26 -

JOINDER FOR PURPOSES OF
PARAGRAPHS 7, 17 AND 19(c)
HEREOF, TAMPELLA CORP

Date:_____, 1993          By_____

ATTEST:

_____

JOINDER FOR PURPOSES OF
THE FINAL SENTENCE OF
PARAGRAPH 11(d) HEREOF,
TAMPELLA SERVICES, INC.

Date:_____, 1993          By_____

ATTEST:

_____

JOINDER FOR PURPOSES OF
PARAGRAPH 11(d) HEREOF,
THE FINAL SENTENCE OF
TAMPELLA POWER CORPORATION

Date:_____, 1993          By_____

ATTEST:

_____

- 26 -

JOINDER FOR PURPOSES OF
PARAGRAPHS 7, 17 AND 19(c)
HEREOF, TAMPELLA CORP

Date:_____, 1993       By_____

ATTEST:

_____

JOINDER FOR PURPOSES OF
THE FINAL SENTENCE OF
PARAGRAPH 11(d) HEREOF,
TAMPELLA SERVICES, INC.

Date:_November 15_, 1993       By _Carmen Rosa_____

ATTEST:

_____

JOINDER FOR PURPOSES OF
PARAGRAPH 11(d) HEREOF,
THE FINAL SENTENCE OF
TAMPELLA POWER CORPORATION

Date:_Nov. 15___, 1993       By _W. H. Pollock_____

ATTEST:

_____

JOINDER FOR PURPOSES OF
PARAGRAPHS 7, 17 AND 19(c)
HEREOF, TAMPELLA CORP

Date:_____, 1993          By_____

                                     ATTEST:


                                     _____

JOINDER FOR PURPOSES OF
THE FINAL SENTENCE OF
PARAGRAPH 11(d) HEREOF,
TAMPELLA SERVICES, INC.

Date:_____, 1993          By_____

                                     ATTEST:


                                     _____

JOINDER FOR PURPOSES OF
PARAGRAPH 11(d) HEREOF,
THE FINAL SENTENCE OF
TAMPELLA POWER CORPORATION

Date:_____, 1993          By_____

                                     ATTEST:


                                     _____

                                     MID-ATLANTIC ENERGY OF PA, INC.

                                     By_____

                                     Its_____

- 26 -

# JACKSON & KELLY PLLC
## ATTORNEYS AT LAW

1600 LAIDLEY TOWER
P. O. BOX 553
CHARLESTON, WEST VIRGINIA  25322

TELEPHONE 304-340-1000      TELECOPIER 304-340-1130

http://www.jacksonkelly.com

Writer's Direct Dial No. 304-340-1086

December 7, 1999

300 FOXCROFT AVENUE
MARTINSBURG, WEST VIRGINIA 25401
TELEPHONE 304-263-8800

256 RUSSELL AVENUE
NEW MARTINSVILLE, WEST VIRGINIA 26155
TELEPHONE 304-455-1751

6000 HAMPTON CENTER
MORGANTOWN, WEST VIRGINIA 26505
TELEPHONE 304-599-3000

412 MARKET STREET
PARKERSBURG, WEST VIRGINIA 26101
TELEPHONE 304-424-3490

1000 TECHNOLOGY DRIVE
FAIRMONT, WEST VIRGINIA 26554
TELEPHONE 304-368-2000

1144 MARKET STREET
WHEELING, WEST VIRGINIA 26003
TELEPHONE 304-233-4000

1660 LINCOLN STREET
DENVER, COLORADO 80264
TELEPHONE 303-390-0003

175 EAST MAIN STREET
LEXINGTON, KENTUCKY 40595
TELEPHONE 606-255-9500

2401 PENNSYLVANIA AVENUE N.W.
WASHINGTON, D.C. 20037
TELEPHONE 202-973-0200

MEMBER OF LEX MUNDI,
THE WORLD'S LEADING ASSOCIATION
OF INDEPENDENT LAW FIRMS.

Internet: vmullins@jacksonkelly.com
Telecopier: 304-340-1080

Sharon Dulaney, Clerk
Wetzel County Circuit Court
P.O. Box 263
New Martinsville, WV 26155

Re:   Michael S. Francis, et al. v. PennPower, Inc., et al.
Civil Action No. 99-C-71-M

Dear Ms. Dulaney:

Enclosed please find six original summonses in the above-referenced civil action.  Please issue and return the summonses to me so that we may forward them to the Secretary of State for service of process.

Thank you for your attention to this matter.

Respectfully,

Victor A. Mullins
Legal Assistant

VAM/
Enclosures

I HEREBY CERTIFY THAT THE ANNEXED INSTRUMENT IS
A TRUE AND CORRECT COPY OF THE ORIGINAL ON FILE
IN MY OFFICE
ATTEST: _____ CIRCUIT CLERK
                                    WETZEL CO. WEST VIRGINIA
BY: _____ DEPUTY CLERK

**SENDER:**
- Check box at right if you require restricted delivery.
- Attach this form to the front of the mailpiece, or on the back if space does not permit.
- The Return Receipt will show to whom the article was delivered and the date delivered.

I also wish to receive the following services (for an extra fee):

1. ☐ Restricted Delivery

Consult postmaster for fee.

3. Article Addressed to:

**PennPower, Inc.**
**Prentice Hall Corporation Systems**
**1013 Center Road**
**Wilmington, DE 18805**

99-C-71-M

4a. Article Number

P 970 617 263

4b. Service Type ☒ CERTIFIED

7. Date of Delivery   11/16/89

5. Received By: (Print Name)

8. Addressee's Address

6. Signature: (Addressee or Agent)
X Judith C. Barbaugh

PS Form 3811, December 1994   Domestic Return Receipt



KEN HECHLER
Secretary of State

MARY P. RATLIFF
Deputy Secretary of State

JAN CASTO
Deputy Secretary of State

CATHERINE FREROTTE
Executive Assistant

Telephone: (304) 558-6000
Corporations: (304) 558-8000
FAX: (304) 558-0900
e-mail: vhaught@secretary.state.wv.us

WILLIAM H. HARRINGTON
Chief of Staff

JUDY COOPER
Director, Administrative Law

Penney Barker
Supervisor, Corporations

(Plus all the volunteer
help we can get)

# STATE OF WEST VIRGINIA

### SECRETARY OF STATE
Building 1, Suite 157-K
1900 Kanawha Blvd., East
Charleston, WV 25305-0770

Sharon Yoho Dulaney
Wetzel County Circuit Court
Wetzel County Courthouse
New Martinsville, WV 26155

# LEGAL NOTICE

November 29, 1999

I am enclosing

| | | | |
|---|---|---|---|
| ____ summons | | __1__ original | |
| ____ notice | | ____ affidavit | |
| ____ order | | ____ answer | |
| ____ petition | | ____ cross-claim | |
| ____ motion | | ____ counterclaim | |
| ____ interrogatories | | ____ request | |
| ____ suggestions | | ____ demand | |
| ____ subpoena duces tecum | | ____ default judgement | |
| ____ summons and complaint | | ____ complaint | |
| ____ 3rd party summons & complaint | | ____ notice of mechanic's lien | |
| ____ summons returned from post office | | ____ suggestee execution | |
| __1__ Certified Return Receipt | | ____ _____ | |

which was served on the Secretary at the State Capitol in his capacity as your statutory attorney-in-fact.
According to law, I have accepted service of process.

____ in your name and on your behalf.
____ in the name and on behalf of your corporation.
____ in the name and on behalf of your unauthorized foreign corporation.
____ in the name and on behalf of your authorized insurance company.
XXXX in the name and on behalf of

99-C-17 M  Penn Power Inc.,  c/o Prentice Hall Corporation

Please note that this office has no connection whatsoever with the enclosed documents other than to accept service of process in your name and on your behalf as your attorney-in-fact. Please address any questions about these documents directly to the court or to the plaintiff's attorney, shown in the enclosed paper. Please, do not call the Secretary of State's Office.

Sincerely,

Vicki Haught

Vicki Haught
Supervisor



KEN HECHLER
Secretary of State

MARY P. RATLIFF
Deputy Secretary of State

JAN CASTO
Deputy Secretary of State

CATHERINE FREROTTE
Executive Assistant

Telephone: (304) 558-6000
Corporations: (304) 558-8000
FAX: (304) 558-0900
e-mail: vhaught@secretary.state.wv.us

WILLIAM R. HARRINGTON
Chief of Staff

JUDY COOPER
Director, Administrative Law

Penney Barker
Supervisor, Corporations

(Plus all the volunteer
help we can get)

## STATE OF WEST VIRGINIA

### SECRETARY OF STATE
Building 1, Suite 157-K
1900 Kanawha Blvd., East
Charleston, WV 25305-0770

## LEGAL NOTICE

November 29, 1999

Sharon Yoho Dulaney
Wetzel County Circuit Court
Wetzel County Courthouse
New Martinsville, WV 26155

I am enclosing

| | |
|---|---|
| ____ summons | __1__ original |
| ____ notice | ____ affidavit |
| ____ order | ____ answer |
| ____ petition | ____ cross-claim |
| ____ motion | ____ counterclaim |
| ____ interrogatories | ____ request |
| ____ suggestions | ____ demand |
| ____ subpoena duces tecum | ____ default judgement |
| ____ summons and complaint | ____ complaint |
| ____ 3rd party summons & complaint | ____ notice of mechanic's lien |
| __1__ summons returned from post office | ____ suggestee execution |
| Insufficient Address | ____ _____ |

which was served on the Secretary at the State Capitol in his capacity as your statutory attorney-in-fact.
According to law, I have accepted service of process.

____ in your name and on your behalf.
____ in the name and on behalf of your corporation.
____ in the name and on behalf of your unauthorized foreign corporation.
____ in the name and on behalf of your authorized insurance company.
_XXXX_ in the name and on behalf of

99-C-71 M  Penn Power Inc.

Please note that this office has no connection whatsoever with the enclosed documents other than to accept service of process in your name and on your behalf as your attorney-in-fact. Please address any questions about these documents directly to the court or to the plaintiff's attorney, shown in the enclosed paper. Please, do not call the Secretary of State's Office.

Sincerely,

Vicki Haught

Vicki Haught
Supervisor

KEN HECHLER
Secretary of State

MARY P. RATLIFF
Deputy Secretary of State

JAN CASTO
Deputy Secretary of State

CATHERINE FREROTTE
Executive Assistant

Telephone: (304) 558-6000
Corporations: (304) 558-8000
FAX: (304) 558-0900
e-mail: vhaught@secretary.state.wv.us

WILLIAM H. HARRINGTON
Chief of Staff

JUDY COOPER
Director, Administrative Law

Penney Barker
Supervisor, Corporations

(Plus all the volunteer
help we can get)



# STATE OF WEST VIRGINIA

## SECRETARY OF STATE

Building 1, Suite 157-K
1900 Kanawha Blvd., East
Charleston, WV 25305-0770

Sharon Yoho Dulaney
Wetzel County Circuit Court
Wetzel County Courthouse
New Martinsville, WV 26155

# LEGAL NOTICE

November 29, 1999

I am enclosing

\_\_\_\_ summons
\_\_\_\_ notice
\_\_\_\_ order
\_\_\_\_ petition
\_\_\_\_ motion
\_\_\_\_ interrogatories
\_\_\_\_ suggestions
\_\_\_\_ subpoena duces tecum
\_\_\_\_ summons and complaint
\_\_\_\_ 3rd party summons & complaint
\_1\_ summons returned from post office
  Insufficient Address

__1__ original
\_\_\_\_ affidavit
\_\_\_\_ answer
\_\_\_\_ cross-claim
\_\_\_\_ counterclaim
\_\_\_\_ request
\_\_\_\_ demand
\_\_\_\_ default judgement
\_\_\_\_ complaint
\_\_\_\_ notice of mechanic's lien
\_\_\_\_ suggestee execution

which was served on the Secretary at the State Capitol in his capacity as your statutory attorney-in-fact.
According to law, I have accepted service of process.

\_\_\_\_ in your name and on your behalf.
\_\_\_\_ in the name and on behalf of your corporation.
\_\_\_\_ in the name and on behalf of your unauthorized foreign corporation.
\_\_\_\_ in the name and on behalf of your authorized insurance company.
XXXX in the name and on behalf of

99-C-71 M  Tamrock Corp.

Please note that this office has no connection whatsoever with the enclosed documents other than to accept service of process in your name and on your behalf as your attorney-in-fact. Please address any questions about these documents directly to the court or to the plaintiff's attorney, shown in the enclosed paper. Please, do not call the Secretary of State's Office.

Sincerely,

Vicki Haught

Vicki Haught
Supervisor



KEN HECHLER
Secretary of State

MARY P. RATLIFF
Deputy Secretary of State

JAN CASTO
Deputy Secretary of State

CATHERINE FREROTTE
Executive Assistant

Telephone: (304) 558-6000
Corporations: (304) 558-8000
FAX: (304) 558-0900
e-mail: vhaught@secretary.state.wv.us

WILLIAM H. HARRINGTON
Chief of Staff

JUDY COOPER
Director, Administrative Law

Penney Barker
Supervisor, Corporations

(Plus all the volunteer
help we can get)

## STATE OF WEST VIRGINIA

### SECRETARY OF STATE
Building 1, Suite 157-K
1900 Kanawha Blvd., East
Charleston, WV 25305-0770

Sharon Yoho Dulaney
Wetzel County Circuit Court
Wetzel County Courthouse
New Martinsville, WV 26155

# LEGAL NOTICE

November 29, 1999

I am enclosing

| | | | |
|---|---|---|---|
| _____ summons | | 1  original | |
| _____ notice | | _____ affidavit | |
| _____ order | | _____ answer | |
| _____ petition | | _____ cross-claim | |
| _____ motion | | _____ counterclaim | |
| _____ interrogatories | | _____ request | |
| _____ suggestions | | _____ demand | |
| _____ subpoena duces tecum | | _____ default judgement | |
| _____ summons and complaint | | _____ complaint | |
| _____ 3rd party summons & complaint | | _____ notice of mechanic's lien | |
| _____ summons returned from post office | | _____ suggestee execution | |
| __  _Certified Return Receipt_ | | _____ _____ | |

which was served on the Secretary at the State Capitol in his capacity as your statutory attorney-in-fact.
According to law, I have accepted service of process.

_____ in your name and on your behalf.
_____ in the name and on behalf of your corporation.
_____ in the name and on behalf of your unauthorized foreign corporation.
_____ in the name and on behalf of your authorized insurance company.
 XXX in the name and on behalf of

99-C-71 M  Tamrock Corp.,  c/o Corporation trust

Please note that this office has no connection whatsoever with the enclosed documents other than to accept service of process in your name and on your behalf as your attorney-in-fact. Please address any questions about these documents directly to the court or to the plaintiff's attorney, shown in the enclosed paper. Please, do not call the Secretary of State's Office.

Sincerely,

Vicki Haught
Supervisor

**SENDER:**
- Check box at right if you require restricted delivery.
- Attach this form to the front of the mailpiece, or on the back if space does not permit.
- The Return Receipt will show to whom the article was delivered and the date delivered.

98-C-71-M

I also wish to receive the following services (for an extra fee):

☐ Restricted Delivery

Consult postmaster for fee.

3. Article Addressed to:

**Tamrock Corp**
**Corporation Trust company**
**1209 Orange Street**
**Wilmington, DE 19801**

4a. Article Number

P 970 617 265

4b. Service Type  ☒ **CERTIFIED**

7. Date of Delivery

11-19-1995

8. Addressee's Address

5. Received By: (Print Name)

6. Signature: (Addressee or Agent)

X  *Jeannee S. Santiago*

Domestic Return Receipt

PS Form **3811**, December 1994

# JACKSON & KELLY PLLC
## ATTORNEYS AT LAW

,300 FOXCROFT AVENUE
MARTINSBURG, WEST VIRGINIA 25401
TELEPHONE 304-263-8800

256 RUSSELL AVENUE
NEW MARTINSVILLE, WEST VIRGINIA 26155
TELEPHONE 304-455-1751

6000 HAMPTON CENTER
MORGANTOWN, WEST VIRGINIA 26505
TELEPHONE 304-599-3000

412 MARKET STREET
PARKERSBURG, WEST VIRGINIA 26101
TELEPHONE 304-424-3490

1000 TECHNOLOGY DRIVE
FAIRMONT, WEST VIRGINIA 26554
TELEPHONE 304-368-2000

1600 LAIDLEY TOWER
P. O. BOX 553
**CHARLESTON, WEST VIRGINIA  25322**

TELEPHONE 304-340-1000      TELECOPIER 304-340-1130

http://www.jacksonkelly.com

Writer's Direct Dial No. 304-340-1086

1144 MARKET STREET
WHEELING, WEST VIRGINIA 26003
TELEPHONE 304-233-4000

1660 LINCOLN STREET
DENVER, COLORADO 80264
TELEPHONE 303-390-0003

175 EAST MAIN STREET
LEXINGTON, KENTUCKY 40595
TELEPHONE 606-255-9500

2401 PENNSYLVANIA AVENUE N.W.
WASHINGTON, D.C. 20037
TELEPHONE 202-973-0200

*MEMBER OF LEX MUNDI,*
*THE WORLD'S LEADING ASSOCIATION*
*OF INDEPENDENT LAW FIRMS*

## November 9, 1999

Internet: vmullins@jacksonkelly.com
Telecopier: 304-340-1080

*99-C-71-M*

Carol L. Hassig, Clerk
Wetzel County Circuit Court
P.O. Box 263
New Martinsville, WV 26155

Re:    Michael S. Francis, et al. v. PennPower, Inc., et al.

Dear Ms. Hassig:

Enclosed please find the following documents to initiate the above-referenced civil action:

1.    Civil Case Information Statement (original and one copy);

2.    Complaint (original and nine copies);

3.    Summons (three originals directed to defendant PennPower, Inc. via their registered agent);

4.    Summons (three originals directed to defendant PennPower, Inc. via their agent);

5.    Summons (three originals directed to defendant Tamrock Corp. via their registered agent);

6.    Summons (three originals directed to defendant Tamrock Corp. via their agent);

7.    Our firm's check in the amount of $75.00 to cover the required filing fee.

*Mailed Summons + complaint back 11-10-99*

Carol L. Hassig, Circuit Court Clerk of Wetzel County, West Virginia
November 9, 1999
Page -2-

I have been in contact with the Process Division of the West Virginia Secretary of State's Office and was informed that no bond is required when its office accepts service on behalf of foreign corporations.   A bond is required, I am told, only when an individual is the target of process.

Please file the original Complaint with the Court, issue the Summonses, and return the date-stamped copies of the Complaint and issued Summonses to my attention.

Should you have any questions, please do not hesitate to contact me at the above direct dial number.  Thank you for your attention to this matter.

Respectfully,

Victor A. Mullins
Legal Assistant

VAM/
Enclosures

# CIVIL CASE INFORMATION STATEMENT
## CIVIL CASES

In the Circuit Court of Wetzel County, West Virginia

: = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = =

## I.   CASE STYLE:

Plaintiff(s)

MICHAEL S. FRANCIS, et al.

Case # 99-C-71-M

Judge  Maolden

vs.

Defendant(s)

PENNPOWER, INC.
c/o Prentice Hall Corp.
  System, Inc., Reg. Agent
1013 Center Road
        Street
Wilmington, DE 19805
        City, State, Zip

Days to

Answer      Type of Service

  30       WV Secretary of State

TAMROCK CORP.
c/o Corporation Trust
  Company, Registered Agent
1209 Orange Street
        Street
Wilmington, DE 19801
        City, State, Zip

  30       WV Secretary of State

_____

        Street
_____
  City, State, Zip

_____   _____

_____

        Street
_____
  City, State, Zip

_____   _____

Original and __9__ copies of complaint furnished herewith.

# CIVIL CASE INFORMATION STATEMENT
# CIVIL CASES

In the Circuit Court of Wetzel County, West Virginia

: = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = =

## I.   CASE STYLE:

Plaintiff(s)                                      Case # 99-C-71-M

MICHAEL S. FRANCIS, et al.              Judge _____

vs.                                                    Days to

Defendant(s)                                    Answer      Type of Service

PENNPOWER, INC.                           __30__      WV Secretary of State
c/o Prentice Hall Corp.
  System, Inc., Reg. Agent
1013 Center Road
            Street
Wilmington, DE 19805
      City, State, Zip


TAMROCK CORP.                            __30__      WV Secretary of State
c/o Corporation Trust
  Company, Registered Agent
1209 Orange Street
            Street
Wilmington, DE 19801
      City, State, Zip


_____           _____     _____

            Street

_____

      City, State, Zip


_____           _____     _____

            Street

_____

      City, State, Zip


Original and __9__ copies of complaint furnished herewith.

## IN THE CIRCUIT COURT OF WETZEL COUNTY, WEST VIRGINIA

MICHAEL S. FRANCIS, an individual,
 WILLIAM E. CARPENTER, JR., in his
 capacity as the executor of the estate of
 JENNY L. FRANCIS, deceased, and
 MICHAEL H. SCHWARTZ, an individual,

        Plaintiffs,

v.                                                                    CIVIL ACTION NO.: 99-C-⁷ l ~ᴹ

PENNPOWER, INC., a Delaware
 corporation, and TAMROCK CORP.,
 formerly known as TAMPELLA CORP., a
 Finnish corporation,

        Defendants.

### COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES

For their respective complaint against the above-named defendants, the plaintiffs
MICHAEL S. FRANCIS, WILLIAM E. CARPENTER, JR., in his capacity as the executor of
the estate of JENNY L. FRANCIS, and MICHAEL H. SCHWARTZ, and each of them, allege
and aver:

### PARTIES

1.    MICHAEL S. FRANCIS is an individual who is a resident of the
Commonwealth of Pennsylvania with his principal residence situated within Allegheny County
("Mr. Francis").  At times relevant to the matters set forth in the complaint, Mr. Francis was
a resident of the State of West Virginia with his principal residence situated within Kanawha
County.

2.    WILLIAM J. CARPENTER is an individual who is serving as the executor of the estate of JENNY L. FRANCIS who, at the time of her death, was a resident of the State of South Carolina ("Mr. Carpenter").   At times relevant to the matters set forth in the complaint, JENNY L. FRANCIS was a resident of the State of West Virginia with her principal residence situated within Kanawha County.

3.    MICHAEL H. SCHWARTZ is an individual who is, and at all times relevant to the matters set forth in the complaint was, a resident of the Commonwealth of Pennsylvania with his principal residence situated within Allegheny County ("Mr. Schwartz").

4.    PENNPOWER, INC., formerly known as SAWCO CORPORATION, is a business corporation organized under the laws of the State of Delaware which did business in the Commonwealth of Pennsylvania at offices or facilities situated in Williamsport, Pennsylvania, but which, at this time, does no business, has no principal office, and exists as a corporate entity solely for the purpose of defending the claims for relief set forth in this complaint ("PENNPOWER").

5.    TAMROCK, CORP., formerly known as TAMPELLA CORP., is a foreign corporation organized under, and existing pursuant to, the laws of Finland but which maintains, and at all times relevant to the matters set forth in this complaint maintained, offices or agents in the Commonwealth of Pennsylvania for purposes which include, but is not limited to, resolving its and PENNPOWER's liabilities to the plaintiffs in this civil action ("Tampella").

## JURISDICTION

6.    Pursuant to the provisions of W. Va. Code § 31-1-15 and W. Va. Code § 56-3-33, the Court has jurisdiction over the person of each of the defendants in that the

2

defendants have transacted business in this state by reason of their execution of a contract that has been, and is to be, performed in the State of West Virginia.

## VENUE

7.     This Court is a proper venue for the prosecution of the matters set forth in this complaint for the reason that the contractual obligations which are the subject matter of this civil action are required to be performed within this venue.

## CAUSE OF ACTION

8.     On or about the date of November 15, 1993, Mr. Francis, JENNY L. FRANCIS ("Ms. Francis"), and Mr. Schwartz, individually and collectively (the "Plaintiffs"), executed a STOCK OPTION AGREEMENT to which PENNPOWER was a party. A true copy of the STOCK OPTION AGREEMENT is attached to, and incorporated in, this complaint as Exhibit "1."

9.     The STOCK OPTION AGREEMENT related to the sale of the shares of stock of MID-ATLANTIC ENERGY OF PA, INC., a corporation duly organized under, and existing pursuant to, the laws of the State of West Virginia ("MAE").

10.     Before the date of the execution of the STOCK OPTION AGREEMENT, Mr. Francis, Ms. Francis, and Mr. Schwartz, collectively, held title to all the issued and outstanding shares of the stock of MAE.

11.     MAE was the general partner of PINEY CREEK LIMITED PARTNERSHIP which was a limited partnership organized pursuant to, and existing under, the laws of the Commonwealth of Pennsylvania ("Piney Creek").

12.     Piney Creek held title to a small power production facility situated in Piney Township, Clarion County, Pennsylvania (the "Project").

3

13.     By reason of the execution of the STOCK OPTION AGREEMENT, PENNPOWER was to acquire title to all the issued and outstanding shares of MAE ("Shares").

14.     As set forth in the provisions of the STOCK OPTION AGREEMENT, PENNPOWER held an option to purchase the Shares, and Mr. Francis, Ms. Francis, and Mr. Schwartz had the right to cause PENNPOWER to purchase the Shares.

15.     Pursuant to the provisions of the STOCK OPTION AGREEMENT, Mr. Francis, Ms. Francis, and Mr. Schwartz invoked their right to require PENNPOWER to purchase the Shares.

16.     Mr. Francis, Ms. Francis, and Mr. Schwartz did, in fact, transfer title to the Shares to PENNPOWER.

17.     Pursuant to the provisions of the STOCK OPTION AGREEMENT, the amount of $250,000 represented the final installment of the consideration for the Shares which was to be paid to Mr. Francis, Ms. Francis, and Mr. Schwartz when three conditions precedent were satisfied (the "Additional Payment").

18.     The first condition precedent was that the lender for the Project and Tampella had to execute a written agreement effectively releasing Tampella from a guaranty of the funding of cost overruns incurred by the Project at certain stages of the Project, including the commencement stage of its commercial operation and the correction stage of certain construction defects (the "First Condition").

19.     The second condition precedent was that the lender had to agree to permit reserve funds or revenues of Piney Creek to be used for the payment of certain operational and maintenance charges of the Project's operator which was, and remains, a subsidiary of Tampella (the "Second Condition").

4

20.     The third condition precedent was that no default was to be declared between the lender and Piney Creek requiring additional capital contributions from the remaining partners of Piney Creek by reason of Piney Creek's correction of an error that had resulted in an organizational cost being improperly listed as an account receivable from MAE (the "Third Condition").

21.     In the express provisions of the STOCK OPTION AGREEMENT, Tampella guaranteed the payment of the Additional Payment by PENNPOWER to Mr. Francis, Ms. Francis, and Mr. Schwartz and evidenced its guaranty by signing the STOCK OPTION AGREEMENT.

22.     To the date of the filing of this complaint, PENNPOWER has not made the Additional Payment.

## CLAIMS FOR RELIEF

### FIRST COUNT
(Declaratory Relief)

23.     The Plaintiffs incorporate by this reference each and every allegation set forth in paragraphs 6 through 22, inclusive, of this complaint as though the allegations were fully set forth in this paragraph.

24.     The Plaintiffs are informed and, therefore, believe that the First Condition has been satisfied, or should be deemed to be satisfied, by reason of a sale of PENNPOWER's shares of stock of MAE to Colmac Clarion, Inc., in July of 1997.

25.     The Plaintiffs are informed and, therefore, believe that the Second Condition has been satisfied, or should be deemed to be satisfied, by reason of a sale of PENNPOWER's shares of stock of MAE to Colmac Clarion, Inc., in July of 1997.

26.     The Plaintiffs are informed and, therefore, believe that the Third Condition has been satisfied, or should be deemed to be satisfied, by reason of a sale of PENNPOWER's shares of stock of MAE to Colmac Clarion, Inc., in July of 1997.

27.     To the extent that any one of the First Condition, the Second Condition, or the Third Condition has not been formally or technically satisfied, the Plaintiffs believe that, if PENNPOWER or Tampella had acted in good faith and with due diligence, the conditions could and would have been formally or technically satisfied by this time.

28.     An implied covenant in the STOCK OPTION AGREEMENT was that SAWCO or Tampella would act in good faith toward, and would fairly deal with, the Plaintiffs requiring, therefore, that PENNPOWER or Tampella, with all due diligence and commitment, would cause the First Condition, the Second Condition, and the Third Condition to be fully and completely satisfied at the earliest possible date.

29.     The Plaintiffs request the declaration of this Court with respect to the rights of the parties under the STOCK OPTION AGREEMENT including, but not limited to, a declaration that the conditions precedent to the Additional Payment have been or should have been satisfied and that the Additional Payment is due and owing by PENNPOWER to the Plaintiffs at this time.

## SECOND COUNT
(Breach of Contract)

30.     The Plaintiffs incorporate by this reference each and every allegation set forth in paragraphs 6 through 22, inclusive, and paragraphs 24 through 29, inclusive, of this complaint as though the allegations were fully set forth in this paragraph.

31.     Notwithstanding its request for a declaration of the parties' respective rights, the Plaintiffs affirmatively allege that the Additional Payment is due and owing by SAWCO to the plaintiffs at this time and that PENNPOWER has refused to make the Additional Payment notwithstanding the Plaintiffs' demand for the Additional Payment.

32.     Accordingly, PENNPOWER has breached its contractual obligations to the Plaintiffs.

33.     Plaintiffs have been damaged by the actions and conduct of PENNPOWER in an amount equal to the Additional Payment plus accrued, and additionally accruing, interest and incurred, and any additionally incurred, expenses of collection.

**THIRD COUNT**
(Breach of Contract)

34.     The Plaintiffs incorporate by this reference each and every allegation set forth in paragraphs 6 through 22, inclusive, and paragraphs 24 through 29, inclusive, of this complaint as though the allegations were fully set forth in this paragraph.

35.     Tampella has guaranteed the payment by PENNPOWER of the Additional Payment.

36.     PENNPOWER has refused to pay the Additional Payment.

37.     Accordingly, Tampella is obligated to pay to the Plaintiffs the Additional Payment plus accrued, and additionally accruing, interest and incurred, and any additionally incurred, expenses of collection.

7

**FOURTH COUNT**
(Breach of the Covenant of Good Faith and Fair Dealing)

38.    The Plaintiffs incorporate by this reference each and every allegation set forth in paragraphs 6 through 22, inclusive, and paragraphs 24 through 29, inclusive, of this complaint as though the allegations were fully set forth in this paragraph.

39.    If the Court declares that the First Condition, the Second Condition, and the Third Condition (the "Conditions") have not been fulfilled or should not be deemed to be fulfilled, this declaration shall have necessarily resulted from the failure of PENNPOWER and Tampella to fulfill the Conditions.

40.    Pursuant to the STOCK OPTION AGREEMENT, PENNPOWER and Tampella, and each of them, had an obligation to perform the express covenants of the agreement in good faith and in fairness to the Plaintiffs.

41.    PENNPOWER and Tampella have, in fact, made no attempt to satisfy the Conditions and, indeed, may have fashioned or manipulated the sale of the stock of MAE in a manner that purposefully avoided the satisfaction of the Conditions.

42.    PENNPOWER and Tampella have taken actions to prevent the Plaintiffs from receiving the Additional Payment, including, but not limited to, refusing to inform the Plaintiffs regarding the sale of the shares of MEA and refusing to divulge the terms and conditions of the sale.

43.    PENNPOWER and Tampella have failed to act in good faith and in fairness to the Plaintiffs in contravention of the implied covenant in the STOCK OPTION AGREEMENT to do so with respect to fulfilling the Conditions.

44.    The Plaintiffs have been injured by reason of the breach of the covenant of good faith and fair dealing and, as a result, PENNPOWER and Tampella, and each of them, is obligated to pay to the Plaintiffs an amount equal to the Additional Payment plus accrued,

8

and additionally accruing, interest and incurred, and any additionally incurred, expenses of collection.

WHEREFORE, the Plaintiffs, and each of them, hereby pray for the following relief with respect to the complaint:

1.    That with respect to the First Count, the Court enter its judgment declaring that all conditions precedent to the Additional Payment have been, or should have been, satisfied, and that the Additional Payment is, at this time, due and owing to the Plaintiffs, and each of them, by PENNPOWER;

2.    That with respect to the Second Count, the Court enter its judgment in favor of the Plaintiffs and against PENNPOWER awarding damages in the amount of $250,000 together with pre-judgment and post-judgment interest at the maximum allowable legal rate and assessing any and all allowable costs of this action, including fees and expenses of attorneys;

3.    That with respect to the Third Count, the Court enter its judgment in favor of the Plaintiffs and against Tampella awarding damages in the amount of $250,000 together with pre-judgment and post-judgment interest at the maximum allowable legal rate and assessing any and all allowable costs of this action, including fees and expenses of attorneys;

4.    That with respect to the Fourth Count, the Court enter its judgment in favor of the Plaintiffs and against each of Tampella and PENNPOWER awarding damages in the amount of $250,000 together with pre-judgment and post-judgment interest at the maximum allowable legal rate and assessing any and all allowable costs of this action, including fees and expenses of attorneys; and

5.     That with respect to all counts of the complaint, the Court award such

other and further relief to the Plaintiffs as the Court deems to be just and proper.

**A TRIAL BY JURY IS DEMANDED AS TO ALL ISSUES TRIABLE TO A JURY.**

MICHAEL S. FRANCIS, an individual, WILLIAM
E. CARPENTER, JR., in his capacity as executor
for the estate of JENNY L. FRANCIS, deceased,
and MICHAEL H. SCHWARTZ, an individual

By Counsel

DANA F. EDDY (W. Va. Bar # 4848)
SHAWN L. REED (W. Va. Bar # 6801)
**JACKSON & KELLY PLLC**
1600 Laidley Tower
P.O. Box 553
Charleston, WV 25322
(304) 340-1307

10

## STOCK OPTION AGREEMENT

THIS STOCK OPTION AGREEMENT, effective as of November 15, 1993 (the "Option Agreement"), is entered into by and among SAWCO CORPORATION, a Delaware corporation ("Sawco"), MID-ATLANTIC ENERGY OF PA, INC., a West Virginia corporation ("MAE") and MICHAEL S. FRANCIS, JENNY L. FRANCIS, and MICHAEL H. SCHWARTZ (hereinafter individually referred to as a "Seller" and collectively referred to as the "Sellers").

WHEREAS, Sellers own beneficially and of record those shares of capital stock of MAE as set forth opposite their respective individual names on Exhibit A attached hereto, which stock in the aggregate constitutes all of the issued and outstanding shares of MAE (collectively, the "Shares"); and

WHEREAS, MAE is the sole general partner of PINEY CREEK LIMITED PARTNERSHIP, a Pennsylvania limited partnership ("PCLP"), of which Sawco and its affiliate, TAMPELLA POWER CORPORATION, a Delaware corporation ("TPC"), are the sole limited partners; and

WHEREAS, PCLP owns a small power production facility situate in Piney Township, Clarion County, Pennsylvania ("Project"); and

WHEREAS, on or about November 3, 1993, TPC and Sellers executed a Memorandum of Agreement in Principle which outlined the terms of an option agreement under which TPC or its affiliate could acquire, or be obligated to acquire, the Shares from Sellers ("Letter of Intent"); and

WHEREAS, the parties hereto wish to set forth the terms and conditions as contemplated by the Letter of Intent.

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements contained herein, and other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the parties hereto, intending to be legally bound hereby, agree as follows:

1.   <u>Recitals</u>.  The foregoing recitals are incorporated into the body of this Agreement and made a part hereof.

2.   <u>Right to Call Shares</u>.

(a)   <u>Grant</u>.  Sellers hereby grant to Sawco, as the designee of TPC under the Letter of Intent, all the rights and obligations reserved to TPC thereunder (except for such obligations as are assumed by Tampella under Paragraphs 7, 17 and 19(c) hereof), including, without limitation, the option to purchase from Sellers during the period commencing this date and extending to and including June 30, 1994 (the "Call Term") all, and not less than all, of the Shares (the "Call").

(b)   <u>Consideration</u>.  In consideration of the grant of the Call, and to induce same, Sawco is paying to Sellers contemporaneous with the execution of this Agreement, a option fee of $500,000 (allocated among Sellers in accordance with their relative interests in MAE as set forth on Exhibit A), which amount shall be applied against the first installment of the purchase price for the Shares when

- 2 -

and if acquired hereunder (either by Call or Put) and is otherwise nonrefundable.  The option fee is being paid by wire transfer to Sellers' designated account(s) at the Bank of Paden City, Paden City West Virginia.

(c)  <u>Call Purchase Price</u>.  The aggregate purchase price (the "Call Exercise Price") to be paid by Sawco for the Shares upon exercise of the Call is $1,355,000, payable (i) $500,000 by application of the option fee theretofore paid under subparagraph (b) above, (ii) $655,000 in guaranteed funds to Sellers (allocated among Sellers in accordance with their respective interests in MAE as set forth on Exhibit A), upon the closing on the Call, and (iii) the balance of $200,000 in guaranteed funds to Sellers (allocated as aforesaid) upon the earlier of (A) the sale of the limited partners' equity in PCLP, (B) a refinancing of the Project which produces excess cash (i.e. any amount by which the proceeds of such refinancing exceeds the sum of the payoff of the prior indebtedness and the costs incurred to effect the refinancing) at settlement to PCLP, but only to the extent of such excess cash less than $200,000 (with the balance of such $200,000, if any, to be paid on June 30, 1994) or (c) June 30, 1994.

(d)  <u>Nature</u>.  The grant of the Call is irrevocable and exclusive.

3.    <u>Right to Put Shares</u>.

(a)    <u>Grant</u>.    Sawco hereby grants to Sellers (acting together) the right to require Sawco to purchase at any time during the period commencing January 1, 1994, and extending to and including June 30, 1994 ("Put Term") all, and not less than all, of the Shares ("Put").

(b)    <u>Put Purchase Price</u>.    The aggregate purchase price ("Put Exercise Price") to be paid by Sawco for the Shares upon exercise of the Put is as follows:

(i)    If at the time of the exercise of the Put, all of the Conditions (hereinafter defined) have been satisfied, the Put Exercise Price shall be the same as the Call Exercise Price and paid in the same manner, each as described in Paragraph 2(c) above.

(ii)    If at the time of the exercise of the Put, all of the Conditions are not satisfied, the Put Exercise Price shall be $1,105,000, payable (A) $500,000 by application of the option fee theretofore paid under Paragraph 2(b) above, (B) $405,000 in guaranteed funds to Sellers (allocated among them in accordance with their relative interests in MAE as set forth on Exhibit A) upon the closing on the Put, and (C) the balance of $200,000 in accordance with the provisions of Paragraph 2(c)(iii) above.    An additional $250,000 shall be payable in guaranteed funds

- 4 -

(allocated as aforesaid) if and when all of the
Conditions have thereafter been satisfied.

(ii)   The "Conditions" are:

A.   The execution by Swiss Bank Corporation
("SBC") as lead lender to the Project of a written
agreement with TAMPELLA CORP, Tampere, Finland, a
Finnish corporation ("Tampella"), on terms which
require the payment or posting of no additional moneys
or recourse to SBC by PCLP, TPC, Sawco, Tampella, or
any of their affiliates (including, without limitation,
MAE after the acquisition of the Shares as contemplated
in this Option Agreement), to the effect that SBC will
cause a release of Tampella's entire $2,000,000 cost
overrun guaranty upon (aa) commercial conversion of the
Project and (bb) remediation of certain Project
construction defects (outlined in the SE Technologies
Deficiency Corrective Action Report dated August 13,
1993 and currently in possession of all parties hereto)
by the contractor or Sawco within a budget reasonably
determined by SBC.

B.   The agreement by SBC, on terms reasonably
acceptable to Sawco, to release PCLP funds and/or
Project operating revenues for the payment of the
Project operator's O&M charges from and after March 6,
1993 (other than Subordinated O&M charges which will be

- 5 -

paid pursuant to the terms of applicable Project documents).

      C.    That by the date when the latter of the events described in clauses (A) or (B) has occurred, SBC has not asserted a default or breach by PCLP of PCLP's Credit Agreement with SBC as a result of the reclassification of PCLP's account receivable from MAE as further described in Paragraph 10, which would require TPC, Sawco, Tampella or any of their affiliates (including, without limitation, MAE after the acquisition of the Shares as contemplated in this Option Agreement) to provide additional capital to PCLP to eliminate such account receivable.

4.    <u>Exercise of Call or Put</u>.

    (a)  Subject to the conditions set forth herein, the Call or Put may be exercised by Sawco or Sellers, as the case may be, for all and not less than all of the Shares during the Call Term or Put Term, as the case may be.  In the event Sawco or Sellers elect to exercise the Call or Put, as the case may be, Sawco or Sellers, as the case may be, shall send a written notice of exercise to Sellers or Sawco, as the case may be, specifying the place and date (not later than five (5) business days nor earlier than three (3) business days from the date such notice is mailed) of such closing.

(b)  Sellers, and each of them, represent(s) that he or she has not, and prior to the expiration of the Call or Put will not, take any action which would have the effect of preventing or disabling Sellers from delivering the Shares to Sawco upon exercise of the Call or otherwise preventing or disabling Sellers from performing their obligations or Sawco from exercising its rights under this Call.  Without limiting the generality of the foregoing, Sellers agree not to (i) take any action which would have the effect of changing any of Sellers' voting or equity interests in MAE, or (ii) permit MAE, (A) to issue any shares of its capital stock, or issue or create any warrants, obligations, subscriptions, options, or convertible securities, or other commitments under which any additional shares of its capital stock may be authorized or issued, or transferred from treasury or (B) sell, dispose or otherwise transfer any of its interest in PCLP.

5.  <u>Delivery</u>.  At the closing on the Put or Call hereunder, (a) Sawco shall pay Sellers the applicable portion of the Call or Put Exercise Price for the Shares and (b) each Seller shall deliver to Sawco stock certificates duly executed in transferable form (or with appropriate stock powers attached) representing such Seller's respective shares so purchased.

6.  <u>Affirmative Covenants of Sellers</u>.

(a)  Commencing on the date hereof and extending to an through December 31, 1993, Sellers shall cause MAE to work

- 7 -

cooperatively with Sawco and use best efforts to resolve major Project issues in a manner reasonably satisfactory to Sawco, such efforts to include (by way of illustration and not limitation):

(i)  negotiating a settlement with FruCon of all contractor issues in a manner consistent with FruCon's September 8, 1993 settlement offer (with such additions and modifications as are reasonably acceptable to both MAE and Sawco);

(ii) negotiating a settlement with SBC which allows for a release of PCLP funds and/or Project operating revenues to pay operating costs to facilitate payment of Project costs such as those outlined in Paragraph 7(a), (b) and (c), under terms and conditions reasonably acceptable to MAE and Sawco;

(iii) achieving the Conditions;

(iv) resolving the Project's ash problem; and

(v)  producing an agreement by all necessary parties with respect to the increase in Project output by an additional 3 megawatts or additional total megawatt hours per annum with up to 100% capacity factor at 30 megawatt capacity.

During such period, Sellers shall continue to devote their time and attention to MAE and PCLP affairs in a manner consistent with past practice.

necessary to maintain MAE's "S" Corporation status as further described in Paragraph 11(1).

7.   <u>Affirmative Covenants of Tampella</u>.

(a)   On or before December 1, 1993 Tampella shall cause payment of certain scheduled and accrued third-party liabilities of PCLP (on behalf of PCLP and the Project) to include Orrick Harrington, Dewey Ballentine, Deloitte & Touche and legal costs for the FruCon (CPC) arbitration, such liabilities currently total approximately $162,000, as well as third-party liabilities of PCLP which are reasonably and necessarily incurred for fair value, from and after the date hereof and continuing for the duration of this Agreement.

(b)   From the date hereof and extending until transfer of the Shares, Tampella shall cause payment of Project G&A costs to MAE in the budgeted amount of $13,333 per month. Fractional months' G&A will be prorated.

(c)   From the date hereof, Tampella shall indemnify Sellers from and against liabilities to FruCon (CPC) or SBC for legal (White & Case) or technical (R.W. Beck) expenses related to the Project which may be adjudicated against Sellers with respect to a court-determined piercing of the MAE corporate veil and as a result of MAE's activities as the general partner of PCLP.  Such indemnification shall not, however extend to liabilities arising out of a breach of MAE of this Agreement.  The defense of any indemnified

- 10 -

liability issue hereunder (including the defense of any veil-piercing issue) shall be controlled and paid for by Tampella.  Additionally, from and after this date, Sawco and each affiliate thereof (i.e. Tampella Services, Inc. and TPC) hereby waives any claim or action against MAE or Sellers for actions taken at any time by MAE or Sellers in the carrying out of MAE's obligations as general partner of PCLP which are taken in good faith and not in violation of this Agreement.

(d)   The parties understand and agree that the costs or indemnified liabilities which Tampella shall cause to be paid under this Paragraph 7 are costs or liabilities of PCLP and that, if moneys are advanced by Tampella, or by Tampella through its affiliate, to PCLP and/or MAE for payment of these costs or liabilities, then, if and when funds are made available to PCLP and/or MAE to cover such costs or liabilities, or any of them, MAE shall cause those moneys to be paid over to Tampella or its affiliate, as appropriate, as reimbursement.

8.   <u>Conditions of Closing on Put or Call Option</u>.  The following shall be conditions of closing on the Put or Call hereunder:

(a)   Repayment to MAE of any shareholder loans and advances due from affiliates of MAE; and

(b)   MAE shall have made no distribution to Sellers during the period commencing January 1, 1993, and extending

- 11 -

to immediately prior to the transfer of the Shares.  The
parties acknowledge that immediately prior to such transfer
MAE shall then make a distribution to Sellers as described
in Paragraph 9 below.  In no event and at no time shall MAE
have distributed or assigned to Sellers or to any other
party, any claim against, or obligation of, PCLP other than
that management fee described in Paragraph 7(b) above for
the current monthly period, which as of closing on the Put
or Call hereunder is accrued but unpaid.

9.   <u>Distribution of Certain Assets by MAE</u>.  Between the
time of the notice of exercise and closing on the Put or Call
hereunder, but not otherwise, Sellers shall have the right to
cause MAE to distribute to them as the shareholders thereof, any
cash of MAE and/or indebtedness due MAE from affiliates of MAE
other than PCLP, with the sole exception of a current period fee
described in Paragraph 7(b), which as of closing on the Put or
Call hereunder shall have been accrued but unpaid.

10.   <u>Financial Representations and Covenants of Sellers</u>.

(a)   The parties acknowledge that PCLP has currently
reflected on its books of account an account receivable in
the amount of approximately $409,000.  MAE and Sellers
advise and represent and Sawco acknowledges that the
classification of such amount as an account receivable is
erroneous and that such amount should be reclassified as
capitalized organization costs of PCLP.

- 12 -

(b)   The parties acknowledge that by law the taxable year of MAE shall terminate with the transfer of the Shares as contemplated herein and consequently Sellers shall report the items of income and expense of MAE from the inception of its fiscal year to the date of such transfer ("Stub Period").   Secondly, the parties agree that if lawful, they will cause the Partnership to allocate to MAE for inclusion in the Stub Period, such percentage of the Partnership's net income/loss for the Stub Period (or each portion thereof) as established under the applicable provisions of the PCLP partnership agreement.

11.   <u>Representations and Warranties of Sellers</u>.   Each Seller hereby represents and warrants (which shall survive closing on the Put or Call hereunder and any investigation by Sawco and affiliates), and at the closing for the purchase of the Shares by Put or Call each Seller will represent and warrant (which shall survive as aforesaid), that:

(a)   Seller is the holder of record of the number of Shares transferred to Sawco at the closing, and such Shares are free and clear of all liens, encumbrances, voting agreements, shareholder agreement, equities, preemptive rights, options, claims, charges and restrictions whatsoever;

(b)   Such Seller has the power, right, capacity and authority to execute and deliver this Option Agreement, and to sell, transfer and deliver her or his respective Shares

- 13 -

to Sawco in accordance with the terms, covenants and conditions of this Option Agreement;

(c)  This Option Agreement has been duly and validly executed and delivered by such Seller and constitutes a valid and binding agreement of the Seller enforceable against Seller in accordance with its terms;

(d)  Such Seller is not subject to or bound by any agreement or judgment, order, writ, prohibition, injunction or decree of any court or other governmental body which would prevent the execution, delivery or performance of this Option Agreement, or the sale, transfer or delivery of the Shares to Sawco as contemplated hereby;

(e)  The Shares so transferred by such Seller have been duly authorized, validly issued, fully paid and are nonassessable;

(f)  MAE owns the sole general partner interest in PCLP and such is free and clear of all liens, encumbrances and, to the best knowledge of Sellers, any claims whatsoever.

(g)  MAE is duly incorporated and organized and validly existing as a corporation in good standing under the laws of its jurisdiction of incorporation, with full corporate power to own or lease and operate its assets and to carry on its business in the manner in which such business is now being conducted, and is in good standing and duly qualified as a foreign corporation in each other jurisdiction where its failure to obtain and maintain such good standing and

- 14 -

qualification would have a material and adverse effect on its conditions (financial or otherwise), assets or business.

(h)  MAE is authorized to issue 20,000 shares of common shares, each with a par value of $10, of which 6,700 shares are issued and outstanding.  The name of and number of shares owned by each of the shareholders of record of such corporation as of the date hereof and as of the closing date on the Put or Call is set forth on Exhibit A.  No person, other than as shown on Exhibit A, owns of record or beneficially any of the capital stock of MAE and all of such capital stock will be owned by the persons set forth on Exhibit A on the closing date on the Put or Call.  The capital stock shown on Exhibit A comprises all of the issued and outstanding capital stock of MAE.  All of the capital stock is validly issued and outstanding, fully paid and nonassessable, and no such capital stock was issued in violation of preemptive rights, nor does any shareholder have a claim to preemptive rights.  There is not outstanding any option, warrant or right to purchase from MAE or from any shareholder of MAE, or to require MAE to issue, any capital stock or other security convertible into or exchangeable for shares of such stock or any other security of MAE.

(i)  Except as specified in Paragraph 10, the Forms 1120S for MAE for 1990 through 1992, inclusive, the Forms 1065 for PCLP for 1990 through 1992, inclusive, the state

- 15 -

tax returns filed by MAE for such period, the audited financial statements for PCLP and consolidated financial statements for MAE and PCLP for fiscal years 1990 through 1992, inclusive, and the internally generated profit and loss statement for MAE and for PCLP for the period January 1, 1993, through September 30, 1993 (collectively "Financial Statements"), heretofore provided to counsel to Sawco are true, correct and complete.  The Financial Statements fairly and accurately present the financial condition of the relevant entity at the respective dates thereof and for the period covered thereby.  Each of the financial Statements has been prepared from the books and records of the respective entity based upon generally accepted accounting principles consistently applied.

(j)  Immediately prior to the closing date on the Put or Call, those assets of MAE described in Paragraph 9 shall have been distributed by MAE to Sellers (and no others), and the remaining assets and the liabilities of MAE shall be limited to those described in Paragraph 6(d) above.  All of the costs of such distributions and assignments (including, but not limited to, Federal and state income taxes, sales, use and transfer taxes, attorneys' fees and other costs) shall be borne by Sellers.

(k)  Except as set forth in Exhibit B attached hereto and incorporated herein by reference, since January 1, 1993, MAE and PCLP have conducted business only in the ordinary

- 16 -

course of business, have made no material alteration in the manner in which MAE or PCLP keeps its books, accounts or records or in the accounting practices therein reflected, and has not made any material amendment or termination of any material contract or obligation of MAE or PCLP.

(1)   MAE has duly filed all tax returns required to be filed by it.  From the inception of its corporate existence to date, MAE has qualified and does qualify as an "S" corporation as defined in Section 1361(a) of the Internal Revenue Code of 1986, as amended, and has maintained and does maintain effective "S" elections with all applicable federal and state taxing authorities which recognize "S" Corporation status.

(m)   Except as set forth on Exhibit C, there is no action, suit, arbitration, proceeding, grievance, or investigation pending, or to the best knowledge of Sellers overtly threatened, before any court, tribunal, panel, master or governmental agency, authority or body in which MAE or PCLP is a party.

(n)   Sellers have disclosed to Sawco all facts of a material nature known to each of them (after reasonable investigation and inquiry) regarding MAE and PCLP.

(o)   Attached hereto as Exhibit D is a listing of all correspondence between MAE and SBC for the period August 8, 1989 through September 30, 1993, which listing was derived from a review of the correspondence file.  The

- 17 -

correspondence file, as delivered to counsel for Sawco and as summarized in Exhibit D contained and, as updated to the date hereof, contains all material correspondence between MAE and SBC.  All material correspondence which shall or should have been added to the SBC correspondence file since September 30, 1993 and to date has been delivered contemporaneously with the execution hereof.

(p)  Attached hereto as Exhibit E is a listing of all correspondence between MAE and Frucon (CPC) for the period June 7, 1990 through  September 30, 1993, which listing was derived from a review of the correspondence file.  The correspondence file, as delivered to counsel for Sawco and as summarized in Exhibit E contained and, as  updated to the date hereof, contains all material correspondence between MAE and Frucon (CPC).  All material correspondence which shall or should have been added to the Frucon (CPC) correspondence file since September 30, 1993 and to date has been delivered contemporaneously with the execution hereof.

(q)  Attached hereto as Exhibit F is a listing of all documents submitted to Sawco and its counsel by Shareholders in response to counsel's request for documents submitted September 27, 1993 as part of its due diligence review.  To the best knowledge of Sellers, (i) the documents listed are all of the documents requested to be provided and the provision thereof is fully responsive to said document

- 18 -

request and (ii) the documents listed are true, correct and complete.

12.   <u>Representations and Warranties of Sawco</u>.  Sawco hereby represents and warrants to Sellers that (a) it has full corporate power and authority to execute and deliver this Option Agreement and to consummate the transactions contemplated hereby; (b) the execution and delivery of this Option Agreement and the consummation of the transactions contemplated hereby have been duly and validly authorized by its Board of Directors and no other corporate proceedings on its part are necessary to authorize this Option Agreement or to consummate the transactions so contemplated; (c) this Option Agreement has been duly and validly executed and delivered by it and constitutes a valid and binding agreement of it enforceable against it in accordance with its terms; and (d) no affiliate of it has any claim or cause of action against MAE or Sellers.

13.   <u>Termination</u>.  Except with respect to the representations and warranties set forth in Paragraphs 11 and 12 hereof and to covenants set forth in Paragraphs 6 and 7 hereof, all of which shall be without limitation, this Option Agreement, and the obligations of Sellers, Tampella and Sawco hereunder, shall automatically terminate upon June 30, 1994, at 5:00 p.m., EDT, unless such termination shall be sooner accomplished by closing on the Put or Call hereunder.

14.   <u>Restrictive Legend</u>.  Upon the execution of this Agreement, Sellers agree to place, or cause to be placed, a

- 19 -

legend on the certificates representing the Shares, substantially to the following effect:

> THE SALE, TRANSFER, ASSIGNMENT, PLEDGE OR ENCUMBRANCE OF THE SHARES REPRESENTED BY THIS CERTIFICATE IS SUBJECT TO THE TERMS AND CONDITIONS OF A STOCK OPTION AGREEMENT, DATED AS OF NOVEMBER 15, 1994, BY AND AMONG SAWCO CORPORATION, MICHAEL S. FRANCIS, JENNY L. FRANCIS AND MICHAEL H. SCHWARTZ, A COPY OF WHICH AGREEMENT IS ON FILE WITH THE SECRETARY OF THE COMPANY.

So long as this Option Agreement is in effect, Sellers further agree to cause MAE to place a stop transfer order on the books and records of MAE with respect to the transfer of any Shares other than pursuant to the terms and conditions of this Option Agreement.

15. <u>Specific Performance</u>. Sellers acknowledge that the Option granted to Sawco herein, and the Shares covered hereby, are unique and that Sawco will have no adequate remedy at law if any of Sellers breaches any covenant contained herein or fails to perform any of such Seller's obligations under this Option Agreement. The parties agree that Sawco, on the one hand and Sellers on the other shall have the right, in addition to any other rights which either such party may have, to specific performance and equitable injunctive relief if either such party shall fail or threaten to fail to perform its or their

obligations to purchase or sell Shares under this Option Agreement.

16.   Condition Precedent.   It is absolute condition of the obligations of Tampella and Sawco under the provisions of this Option Agreement that each and all of Sellers sign this Option Agreement.

17.   Payment Guaranty.   Tampella hereby guarantees to Sellers the payment of the Call Exercise Price or the Put Exercise Price, as applicable, due them from Sawco under this Agreement.

18.   Right of Offset.   Any claims of Tampella or Sawco arising hereunder against Sellers and/or MAE as a result of the breach by Sellers and/or MAE of any representation, warranty covenant or agreement of Sellers and/or MAE set forth herein shall be satisfied first by a right of set-off against moneys then due and owing hereunder by Tampella and/or Sawco to Sellers.

19.   Miscellaneous.

(a)   Assignability.   No party hereto shall assign any interest herein without the prior written consent of the other parties hereto, which shall not be unreasonably withheld.

(b)   Validity.   The invalidity or unenforceability of any provision of this Option Agreement shall not affect the validity or enforceability of any other provisions of this

- 21 -

Option Agreement, which shall remain in full force and effect.

(c)  <u>Further Assurances</u>.  Tampella, Sawco and Sellers will execute and deliver all such further documents and instruments and take all such further action as may be necessary in order to consummate the transactions contemplated hereby.

(d)  <u>Third Parties</u>.  Nothing expressed or implied in this Agreement is intended or shall be construed to confer upon or give to any third party any rights or remedies by virtue of this Agreement or any exercise or nonexercise of the Put and Call granted hereby.

(e)  <u>Amendments or Extension</u>.  This Option Agreement may not be modified, amended, altered or supplemented except upon the execution and delivery of a written agreement executed by all the parties hereto.  This Option Agreement may be extended upon the mutual written agreement of all of the parties hereto.

(f)  <u>Notices</u>.  Except as otherwise expressly provided herein, all notices, requests, claims, demands and other communications hereunder shall be in writing and shall be furnished by hand delivery, by telegram or telex, or by mail (registered or certified, postage prepaid, return receipt requested) to Sellers and Sawco at the addresses set forth below.  Any such notice shall be deemed duly given upon the date it is actually received by the addressee to whom notice

- 22 -

is intended to be given or it is actually delivered at the
address of the addressee as shown below:

<table>
<tr><td>If to Sellers:</td><td>Michael S. &amp; Jenny L. Francis<br>401-A Bibby Street<br>Charleston, WV  25301</td></tr>
<tr><td></td><td>Michael H. Schwartz<br>1800 Beechwood Boulevard<br>Pittsburgh, PA  15217</td></tr>
<tr><td>With a copy to:</td><td>Lee O. Hill, Esquire<br>Jackson &amp; Kelly<br>1600 Laidley Tower<br>P.O. Box 553<br>Charleston, WV  25322</td></tr>
<tr><td>If to Sawco:</td><td>Hannu Rusanen<br>Tampella Power Corporation<br>2600 Reach Road<br>P.O. Box 3308<br>Williamsport, PA  17701-0308</td></tr>
<tr><td>With a copy to:</td><td>Michael G. Jarman, Esquire<br>McNees, Wallace &amp; Nurick<br>100 Pine Street<br>P.O. Box 1166<br>Harrisburg, PA  17108-1166</td></tr>
</table>

The addresses set forth above may be changed by Sellers
or Sawco, as the case may be, upon furnishing to the other
party a notice of change of address in accordance with the
terms of this paragraph.  With respect to the notice to be
provided under Paragraph 4(a) hereof, each Seller hereby
irrevocably appoints and constitutes Michael S. Francis his
or her designated representative for purposes of
communicating Sellers' decision with respect to the exercise
of the Put.

(g)  Governing Law.  This Option Agreement shall be
governed by and construed in accordance with the substantive

- 23 -

law of the Commonwealth of Pennsylvania applicable to contracts made and to be performed in such state.

(h)  Counterparts.  This Option Agreement may be executed in several counterparts, each of which shall be an original, but all of which together shall constitute one and the same agreement.

(i)  Effect of Headings.  The section and paragraph headings herein are for convenience only and shall not affect the construction hereof.

(j)  Time of the Essence.  The parties agree that time shall be of the essence in the performance of all obligations hereunder.

(k)  Successors and Assigns.  This Option Agreement shall be binding upon and inure to the benefit of the parties, their heirs, personal representatives, respective successors and permitted assigns.

(l)  Integration.  This Agreement (including the Exhibits hereto) constitutes the entire agreement between the parties (and their affiliates) regarding the subject matter hereof and replaces any prior agreements or understandings among the parties, including without limitation that contained in the Memorandum of Understanding effective September 13, 1990.

20.  Confidentiality.  Neither the Sellers, or any of them, on one hand, or Sawco, on the other hand, shall disclose to any third party the nature or existence of this Agreement or the

terms hereof without the express, written consent of the other party. Notwithstanding the foregoing, Sawco may disclose the existence of this Agreement to SBC and FruCon (CPC) in the course of its negotiations with such parties as it may determine in its sole discretion.

21. <u>Control of Tax Matters</u>. Sellers assume all tax liabilities of MAE accruing to the date of transfer of the Shares. Sellers shall control the prosecution or defense of any disputes with taxing authorities relating to such liabilities, and shall pay all costs relating thereto.

IN WITNESS WHEREOF, the parties have caused this Agreement to be duly executed on the day and year stated below:

SAWCO, CORPORATION

Date:_____, 1993    By_____

ATTEST:

_____

SELLERS:

Date:_____, 1993    _____(SEAL)
                                Michael S. Francis

Date:_____, 1993    _____(SEAL)
                                Jenny L. Francis

Date: _____, 1993    _____(SEAL)
                                Michael H. Schwartz

**[Signatures continued on next page.]**

- 25 -

terms hereof without the express, written consent of the other party.  Notwithstanding the foregoing, Sawco may disclose the existence of this Agreement to SBC and FruCon (CPC) in the course of its negotiations with such parties as it may determine in its sole discretion.

21.  <u>Control of Tax Matters</u>.  Sellers assume all tax liabilities of MAE accruing to the date of transfer of the Shares.  Sellers shall control the prosecution or defense of any disputes with taxing authorities relating to such liabilities, and shall pay all costs relating thereto.

IN WITNESS WHEREOF, the parties have caused this Agreement to be duly executed on the day and year stated below:

SAWCO, CORPORATION

Date:_____, 1993       By_____

ATTEST:

_____

SELLERS:

Date:_____, 1993       _____(SEAL)
                                   Michael S. Francis

Date:_____, 1993       _____(SEAL)
                                   Jenny L. Francis

Date: _____, 1993       _____(SEAL)
                                   Michael H. Schwartz

**[Signatures continued on next page.]**

- 25 -

terms hereof without the express, written consent of the other party.  Notwithstanding the foregoing, Sawco may disclose the existence of this Agreement to SBC and FruCon (CPC) in the course of its negotiations with such parties as it may determine in its sole discretion.

21.  <u>Control of Tax Matters</u>.  Sellers assume all tax liabilities of MAE accruing to the date of transfer of the Shares.  Sellers shall control the prosecution or defense of any disputes with taxing authorities relating to such liabilities, and shall pay all costs relating thereto.

IN WITNESS WHEREOF, the parties have caused this Agreement to be duly executed on the day and year stated below:

SAWCO, CORPORATION

Date:_____, 1993          By_____

ATTEST:

_____

SELLERS:

Date:_____, 1993          _____(SEAL)
                                     Michael S. Francis

Date:_____, 1993          _____(SEAL)
                                     Jenny L. Francis

Date: _____, 1993          _____(SEAL)
                                     Michael H. Schwartz

**[Signatures continued on next page.]**

- 25 -

terms hereof without the express, written consent of the other party.  Notwithstanding the foregoing, Sawco may disclose the existence of this Agreement to SBC and FruCon (CPC) in the course of its negotiations with such parties as it may determine in its sole discretion.

21.  <u>Control of Tax Matters</u>.  Sellers assume all tax liabilities of MAE accruing to the date of transfer of the Shares.  Sellers shall control the prosecution or defense of any disputes with taxing authorities relating to such liabilities, and shall pay all costs relating thereto.

IN WITNESS WHEREOF, the parties have caused this Agreement to be duly executed on the day and year stated below:

SAWCO, CORPORATION

Date:_____, 1993        By_____

ATTEST:

_____

SELLERS:

Date:_____, 1993        _____(SEAL)
                                    Michael S. Francis

Date:_____, 1993        _____(SEAL)
                                    Jenny L. Francis

Date:  11-15      , 1993        _____(SEAL)
                                    Michael H. Schwartz

[Signatures continued on next page.]

- 25 -

JOINDER FOR PURPOSES OF
PARAGRAPHS 7, 17 AND 19(c)
HEREOF, TAMPELLA CORP

Date:_____, 1993        By _____

ATTEST:

_____

JOINDER FOR PURPOSES OF
THE FINAL SENTENCE OF
PARAGRAPH 11(d) HEREOF,
TAMPELLA SERVICES, INC.

Date:_____, 1993        By_____

ATTEST:

_____

JOINDER FOR PURPOSES OF
PARAGRAPH 11(d) HEREOF,
THE FINAL SENTENCE OF
TAMPELLA POWER CORPORATION

Date:_____, 1993        By_____

ATTEST:

_____

- 26 -

JOINDER FOR PURPOSES OF
PARAGRAPHS 7, 17 AND 19(c)
HEREOF, TAMPELLA CORP

Date:_____, 1993        By _____

ATTEST:

_____

JOINDER FOR PURPOSES OF
THE FINAL SENTENCE OF
PARAGRAPH 11(d) HEREOF,
TAMPELLA SERVICES, INC.

Date:_____, 1993        By_____

ATTEST:

_____

JOINDER FOR PURPOSES OF
PARAGRAPH 11(d) HEREOF,
THE FINAL SENTENCE OF
TAMPELLA POWER CORPORATION

Date:_____, 1993        By_____

ATTEST:

_____

- 26 -

JOINDER FOR PURPOSES OF
PARAGRAPHS 7, 17 AND 19(c)
HEREOF, TAMPELLA CORP

Date:_____, 1993        By_____

                                   ATTEST:

                                   _____


JOINDER FOR PURPOSES OF
THE FINAL SENTENCE OF
PARAGRAPH 11(d) HEREOF,
TAMPELLA SERVICES, INC.

Date: *November 15* , 1993         By _____

                                   ATTEST:


JOINDER FOR PURPOSES OF
PARAGRAPH 11(d) HEREOF,
THE FINAL SENTENCE OF
TAMPELLA POWER CORPORATION

Date: *Nov. 15* , 1993             By _____

                                   ATTEST:


- 26 -

JOINDER FOR PURPOSES OF
PARAGRAPHS 7, 17 AND 19(c)
HEREOF, TAMPELLA CORP

Date:_____, 1993        By_____

ATTEST:

_____


JOINDER FOR PURPOSES OF
THE FINAL SENTENCE OF
PARAGRAPH 11(d) HEREOF,
TAMPELLA SERVICES, INC.

Date:_____, 1993        By_____

ATTEST:

_____


JOINDER FOR PURPOSES OF
PARAGRAPH 11(d) HEREOF,
THE FINAL SENTENCE OF
TAMPELLA POWER CORPORATION

Date:_____, 1993        By_____

ATTEST:

_____


MID-ATLANTIC ENERGY OF PA, INC.

By_____

Its_____


- 26 -

IN THE CIRCUIT COURT
OF WETZEL COUNTY, WEST VIRGINIA

MICHAEL S. FRANCIS,                    :
WILLIAM E. CARPENTER, JR.,             :
MICHAEL H. SCHWARTZ,                   :
                                       :
                 Plaintiffs,           :
                                       :
         v.                            :        Civil Action No. 99-C-71-M
                                       :
PENNPOWER, INC.,                       :
TAMROCK CORP.,                         :
                                       :
                 Defendants.           :

## NOTICE OF FILING NOTICE OF REMOVAL

Defendants PennPower, Inc. and Tamrock Corp. herewith file the attached copy of their

Notice of Removal, filed in the United States District Court for the Northern District of West

Virginia on December 10, 1999.  Pursuant to 28 U.S.C. § 1446(d), the filing of this Notice of

Removal effects the removal of the case to the United States District Court for the Northern

District of West Virginia, and this Court shall proceed no further with this case unless and until

the case is remanded from federal court.  Counsel for Defendants certify that a true and correct

copy of the foregoing Notice of Filing Notice of Removal was mailed this 10th day of

December,

CL578203.1

1999 to Dana F. Eddy and Shawn L. Reed, Jackson & Kelly PLLC, 1600 Laidley Tower, P.O.

Box 553, Charleston, WV 25322.

Larry J. Rector (W. Va. Bar No. 6418)
STEPTOE & JOHNSON
Bank One Center
P. O. Box 2190
Clarksburg, WV  26302-2190

Of Counsel

Attorneys for Defendants
PennPower, Inc. and Tamrock Corp.

Dated: December 10, 1999

CL578203.1

-2-

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this date a true and correct copy of the foregoing Notice of Filing Notice of Removal was served by United States first class mail, postage prepaid, upon the following:

> Dana F. Eddy
> Shawn L. Reed
> Jackson & Kelly PLLC
> 1600 Laidley Tower
> P.O. Box 553
> Charleston, WV 25322

Larry J. Rector (W. Va. Bar No. 6418)

Dated: December 10, 1999

CL578203.1

# STEPTOE & JOHNSON
### ATTORNEYS AT LAW
BANK ONE CENTER

SIXTH FLOOR

P. O. BOX 2190

CLARKSBURG, W. VA. 26302-2190

(304) 624-8000

FACSIMILE (304) 624-8183

December 10, 1999

rectorlj@steptoe-johnson.com

BANK ONE CENTER, SEVENTH FLOOR
P. O. BOX 1588
CHARLESTON, W. VA. 25326-1588
(304) 353-8000
FACSIMILE (304) 353-8180

1000 HAMPTON CENTER
MORGANTOWN, W. VA. 26507-1616
(304) 598-8000
FACSIMILE (304) 598-8116

126 EAST BURKE STREET
P. O. BOX 2629
MARTINSBURG, W. VA. 25402-2629
(304) 263-6991
FACSIMILE (304) 262-3541

RILEY BUILDING, FOURTH FLOOR
14TH AND CHAPLINE STREETS
P. O. BOX 150
WHEELING, W. VA. 26003-0020
(304) 233-0000
FACSIMILE (304) 233-0014

THE RIVERS OFFICE PARK
200 STAR AVENUE, SUITE 220
P.O. BOX 668
PARKERSBURG, W. VA. 26102-0628
(304) 422-6463
FACSIMILE (304) 422-8467

ALAN B. MOLLOHAN INNOVATION CENTER
1000 TECHNOLOGY DRIVE
SUITE 210
FAIRMONT, W. VA. 26554-8824
(304) 368-8000
FACSIMILE (304) 368-8413

(304) 624-8151
WRITER'S DIRECT DIAL NUMBER

Ms. Sharon M. Dulaney, Circuit Clerk
Wetzel County Courthouse
Main and Washington Streets
New Martinsville, WV 26155

Re:   Michael S. Francis, et al v. PennPower, Inc., et al
Civil Action No. 99-C-71-M

Dear Ms. Dulaney:

Enclosed is a copy of a "Notice of Removal" and "Proof of Notice of Removal to Adverse Party and Filing of Notice of Removal in State Court" and the original of a "Notice of Filing of Notice of Removal," which the defendants have filed in the above-referenced matter in the United States District Court for the Northern District of West Virginia. I request that you mark these documents "filed" and place them in the appropriate court file. Pursuant to federal law, no further action is to be taken with respect to this case in the Circuit Court of Wetzel County.

Also, pursuant to the Local Rules applicable to the United States District Court for the Northern District of West Virginia, I request that you provide to me a certified copy of any and all documents in your possession concerning the above-captioned case. I will see to it that those documents are filed in the United States District Court for the Northern District of West Virginia. I will pay for any charges associated with this request.

Thank you for your cooperation and assistance. Should you have any questions, please do not hesitate to contact me.

Very truly yours,

Larry J. Rector /VLG

Larry J. Rector

LJR:gp
cc:
      Dana F. Eddy, Esq.
      Shawn L. Reed, Esq.